[Sunbury, June 15, 1829.]

MILLIKEN and another *against* BROWN.

APPEAL.

A receipt, not under seal, to one of several joint debtors, for his proportion of the debt, discharges the rest.

APPEAL from the decision of the Chief Justice, holding a Circuit Court for *Mifflin* county, on the 15th of *April*, 1829.

In the Court of Common Pleas, the plaintiffs, *Foster Milliken* and *David Milliken*, trading under the firm of *Foster Milliken &*

*Co.*, had, on the 4th of *February*, 1819, recovered judgment against *John Brown, William Brown*, jr. and Dr. *John Watson*, trading under the firm of *John Brown & Co.*, by award of arbitrators, for five thousand eight hundred and eighty-nine dollars and ninety-six cents. In order to obtain the legal stay of execution, the defendants had procured security to be entered for the debt, interest, and costs, under the act of the 21st of *March*, 1806. But, long before the expiration of the stay, *David Milliken*, one of the plaintiffs, had issued a *Fieri Facias* upon the judgment, on which a return of " *nulla bona*" was made by the sheriff of *Mifflin* county. Within two days after, he also procured a *Testatum Fieri Facias*, directed to the sheriff of *Lancaster* county. With this *Testatum, David Milliken* proceeded to *Lancaster* county, where Dr. *Watson* resided. Upon seeing the execution, *Watson* paid to *Milliken* four hundred dollars, and afterwards sixteen hundred dollars more, and took the following receipts, viz.

"27th of *March*, 1819.—Received of Dr. *John Watson*, four hundred dollars, in part of a judgment *Foster Milliken & Co.* v. *John Brown & Co.*

"*David Milliken.*"

"*May* 4th, 1819.—Received, by the hands of *Christian Haldeman*, from Dr. *John Watson*, sixteen hundred dollars, a balance of two thousand dollars, his part of a judgment *Foster Milliken & Co.* v. *John Brown & Co.* For *Foster Milliken & Co.*

"*David Milliken.*"

The consequence of this proceeding of *David Milliken*, as it respected the surety in the recognisance, and the ultimate decision of this court upon it, may be seen in the case of *Milliken and others* v. *Brown*, 10 *Serg. & Rawle*, 188.

It was alleged, that the taking from *Watson* the two thousand dollars in full of his third of the debt, operated as an entire discharge of *John Brown* and *William Brown*, jr., and upon this ground the Court of Common Pleas opened the judgment so as to let in a defence. Issue was joined upon the plea of payment. A release was also pleaded, to which there was a replication of *non est factum*. The defence, upon the trial in the Circuit Court, was carried on by *John Brown* alone; *William Brown*, jr. having confessed judgment for one-third of the claim, on an agreement, that no effect was thereby to be produced on the case as respected *John Brown*. In addition to the facts before mentioned, *John Brown* proved upon the trial, that at the times of the return of the *nulla bona* by the sheriff of *Mifflin* county, and of taking out the *Testatum Fieri Facias*, the defendants in the judgment owned, and were in possession of real and personal estate, consisting of a forge, furnace, stills, &c. in *Mifflin* county. He also gave in evidence, further to enforce and explain the written receipt, the deposition of *Christian Haldeman*, who testified as follows:—

(Milliken and another *v.* Brown.)

" 27th of *March*, 1819, Dr. *Watson* and *David Milliken* called upon the witness, and *Watson* stated that *Milliken* had an execution against him, *Watson*, for about six thousand dollars. They then came to an agreement, and Dr. *Watson* agreed to pay two thousand dollars, his part of the judgment, and that four hundred dollars was paid by *Watson* on that day. *Watson* left in the hands of the witness sixteen hundred dollars, to be paid to the plaintiffs, which was done by Mr. *Elder* in the absence of the witness, &c."

To the following question put by the defendant:—" Do you remember what the purport of the verbal agreement was between Dr. *Watson* and *David Milliken?*" the witness answered:—" Dr. *Watson* was to pay *Milliken* four hundred dollars then, and sixteen hundred dollars in ten or fifteen days: if Dr. *Watson* would do that, then he, *David Milliken*, would exonerate him from his part of the judgment. I think you will find the receipt to say the same thing, or words to that effect." Sundry cross-questions were put by the plaintiffs, which are not material, except that, from the answer to one of them, it appeared, that the receipt for sixteen hundred dollars had been drawn up, or the form for it given, by *Watson* himself. The following questions may also be excepted:—*Question* 8th. "At the time of the verbal agreement between Dr. *Watson* and *Milliken*, did *Milliken* say, that if he could recover the balance of the judgment from the property of the company, or the other partners, he would not look to Dr. *Watson* for it?" *Answer.* " I do not know of any such agreement, or conversation." *Question* 9th. " What did you understand by the word *exonerate*, as applied to the verbal agreement between Dr. *Watson* and *Milliken?*" *Answer.* " I considered it was in full for his part of the judgment for about six thousand dollars." *Question* 10th. " Did you believe that it was intended to exonerate either *John Brown* or *William Brown*, jr.?" *Answer.* " I did not, but to exonerate the doctor only."

Upon this evidence His Honour, the Chief Justice, charged the jury, that the acts, the receipt of two thousand dollars, and the agreement of *David Milliken*, amounted to a release to *John Watson* and to the present defendant; and that in point of law, the plaintiff could not recover. The verdict being for the defendant, a motion was made for a new trial, which was refused, and this appeal thereupon brought by the plaintiffs, alleging error in the charge of the Chief Justice.

*Hale* and *Blythe*, for the appellants.—The plaintiffs might have levied their whole debt upon the property of any one of their joint debtors, and in receiving a part from one, and looking to the others for the residue, they did no more than agree to do that, which, without agreement they might lawfully have done. Even a release under seal to one of two obligors, may not in equity operate as a discharge to the other. Parties are bound only so far as they intend to be so. *Kirby* v. *Taylor*, 6 *Johns. Ch. Rep.* 242. But it is settled by many authorities, that any thing short of a technical re-

(Milliken and another *v.* Brown.)

lease under seal to one of several joint debtors, does not exonerate the rest. The ground upon which the old cases go is, that a technical release is satisfaction, but a receipt of less than the whole debt, without a release, is not satisfaction. *Cumber v. Wane,* 1 *Stra.* 426. A receipt in full is not conclusive, but may be explained. *Putnam v. Lewis,* 8 *Johns.* 304. And if a note of a third person be taken for goods sold and delivered, it is no payment, unless the vendor specially agrees to take it absolutely as such. It ought to have been left to the jury to determine whether the money was received in satisfaction of the debt. *Johnson v. Weed,* 9 *Johns. Rep.* 310. *Tobey v. Barber,* 5 *Johns. Rep.* 68. A receipt for part of the debt from one joint debtor, and an agreement not to look to him for the remainder, is a covenant not to sue, and not a release, and, therefore, does not discharge the other joint debtor. A release of one must be a technical release under seal, in order to discharge both. *Rowley* v. *Stoddard,* 7 *Johns. Rep.* 207. *Harrison* v. *Close,* 2 *Johns. Rep.* 448. 17 *Johns. Rep.* 174. 20 *Johns. Rep.* 78, 462. Here the plaintiffs did not even discharge Dr. *Watson;* they might still have gone against him; but admitting he was discharged, there was nothing in the agreement to prevent either of the *Browns* from having recourse to him, in the event of their being obliged to pay the money.

*Potter* and *Blanchard, contra.*—The money having been received from Dr. *Watson* before the stay of execution had expired, and consequently before the debt was payable, there was a valuable consideration for the discharge, though it was not under seal; for it is well settled, that payment before the day, of a less sum, is good satisfaction. *Cro. Eliz.* 45. *Pinel's Case,* 5 *Co.* 117. A release to one of two joint and several obligors, discharges both. 5 *Bac. Ab.* 713. *Co. Lit.* 232, 236. 2 *Salk.* 374. *Needham's Case,* 8 *Co.* 270. 2 *Roll.* 411. *Heckinote's Case,* 9 *Co.* 52. *Cro. Eliz.* 161. 6 *Co.* 218. *Barrington* v. *The Bank of Washington,* 14 *Serg. & Rawle,* 425. So, satisfaction received from one, or a release executed to one of several joint trespassers discharges all, though the liability of the others be specially reserved. *Rulh* v. *Turner,* 2 *Hen. & Munf.* 38. In trespass the jury cannot sever the damages. *Hill* v. *Goodchild,* 5 *Burr.* 2792. And a release by one of several partners is good against all. *Piersons* v. *Hooker,* 3 *Johns. Rep.* 70. Upon the same principle, that satisfaction from one joint and several debtor exonerates the other, a judgment obtained against one partner, is a bar to a suit against a dormant partner. *Smith* v. *Black,* 9 *Serg. & Rawle,* 142. The judgment was a lien on the property of the partners. The execution could not have been levied on the interest of the two *Browns* in the partnership property, for instance, in the stock in the iron works which they carried on as partners. Nor could a *Scire Facias* issue on the judgment against the two *Browns* omitting *Watson.* It follows, that all must have been bound, or none were bound. In substance, the paper given by the

(Milliken and another *v.* Brown.)

plaintiffs to *Watson* was a release. That it was not under seal, did not diminish its legal effect. In equity, a parol release is valid. The intention being every thing, the mode of discharge is immaterial. In *Pennsylvania*, a seal is by no means necessary to the efficacy of a release. This has been determined in relation to so solemn an instrument as a mortgage, which may be discharged by parol. *Wentz* v. *Dehaven*, 1 *Serg. & Rawle*, 319. The conclusion to be deduced from all the cases is, that the exoneration of *Watson*, was on a valuable consideration, and that being in substance a release of a joint debtor, it discharges all. The authorities are clear to this effect, and they are founded in reason. If the *Browns* were left to pay the debt, and demand contribution from *Watson*, the exoneration of him, for which the plaintiffs received a valuable consideration, would be frustrated. If, on the other hand, they are not to have contribution, then in case of the insolvency of one of the two remaining debtors, the other would have to bear the burden of two-thirds of the debt, which would be unjust. The plaintiffs are, therefore, involved in the dilemma, of doing an injury either to *Watson* or his co-debtors. This they could not do. They were bound to make their release good in a way not to jeopard any one, and that they could only do by resigning their claims to the residue of the debt.

The opinion of the court was delivered by

Huston, J.—A suit was originally brought in the Court of Common Pleas of *Mifflin* county, by *Foster* and *David Milliken*, trading, &c. against *John Brown, William Brown*, jr. and *John Watson*, under the firm of *John Brown & Co.*, and a judgment obtained on the 4th of *February*, 1819, for five thousand eight hundred and eighty-nine dollars and ninety-six cents. On the 18th of *March*, 1819, the defendants gave bail absolute for the payment of the money, in order to obtain stay of execution for one year, according to the act of assembly. Notwithstanding this, *David Milliken*, one of the plaintiffs, procured a writ of *Fieri Facias* to be issued in *Mifflin* county on the 23d of *March*, 1819; and, the sheriff of *Mifflin* county endorsed a return of *nulla bona* thereon, although the furnace, forge, and stock of the defendants were in that county, and although both *John* and *William Brown*, jr., who lived in that county at that time, had each of them large real and personal estate, and this well known to the plaintiffs and sheriff. On the 24th of *March, David Milliken* procured a *Testatum Fieri Facias* to be issued, directed to the sheriff of *Lancaster* county, where *John Watson* lived, and was of considerable wealth; but who, living at a distance, knew nothing of the suit or judgment, or bail for stay of execution. *David Milliken* called on *John Watson* with the *Fieri Facias*, who, being uneasy at the idea of so large an execution against him, agreed to pay four hundred dollars at once, and did pay it; and further agreed to pay, and did pay into the

(Milliken and another *v.* Brown.)

hands of *Christian Haldeman* sixteen hundred dollars more, within a few days, for the plaintiffs. This was expressly on an agreement to exonerate him from all further liability on that judgment, as was expressly proved by Mr. *Haldeman*, and the receipt given by *Milliken*, which was in these words:—"*May* 4th, 1819, received by the hands of *Christian Haldeman* from Dr. *John Watson*, sixteen hundred dollars, the balance of two thousand dollars, his part of a judgment *Foster Milliken & Co.* v. *John Brown & Co.*, for *Foster Millikin & Co.*, *David Milliken*." Nothing further was done until the expiration of the year, when a suit was brought against *William Brown*, Esq., father of *John* and *William*, on the recognisance of bail, reported in 10 *Serg. & Rawle*, 189. Afterwards, in consequence of the opinion given in that case, among other reasons, the judgment was opened so far as to let the defendants into a defence; and they pleaded payment, with leave, &c., a release and issues taken. At a Circuit Court in *April*, 1828, the cause came on to be tried. *John Brown* was then absent from this state. After the jury were sworn, there was taken, by consent, a judgment against *William Brown*, jr. for one-third of the original debt and interest to that time, with an agreement, that this was not to affect the claim of the plaintiffs against *John Brown;* that the names of *William Brown*, jr. and *John Watson* were to remain on the record, but they were not to be affected by any judgment which might be recovered against *John Brown:* and the jury were discharged.

At *April* Circuit Court in 1829, for *Mifflin* county, the cause came on before the Chief Justice, who directed the jury, that the acts, the receipts and the agreement of *David Milliken*, discharged *John Watson;* and also, discharged *John Brown*, the only defendant before him: and verdict for the defendant, motion for new trial overruled, and judgment and appeal.

It is understood that it was not contended at the Circuit Court, and certainly it was not much insisted on here, and could not have been with effect, that *John Watson* is not totally discharged; but, it was contended, 1. That although a release will discharge one of several co-defendants, and will also be a release of all, yet, it must be a technical release under seal: but, that a receipt, a paper not under seal, will not have that effect, and that a receipt, though in writing, is always open to explanation, and cited, *Putnam* v. *Lewis*, 8 *Johns.* 304, and *Johnson* v. *Weed*, 9 *Johns.* 310, which certainly say so; and also 2 *Johns.* 449, and *Rowley* v. *Stoddard*, 7 *Johns.* 207, which do say, that a receipt in full to one defendant, does not discharge the co-defendants, but that a technical release under seal will.

The courts of *New York* have been composed of men of such knowledge and character, that their decisions are entitled to great respect; and it is with diffidence they are questioned. We are obliged, however, sometimes to question them, and to decide con-

(Milliken and another *v.* Brown.)

trary to them, or to give up, not barely a course of our own deci-
sion, but our whole system of jurisprudence.   They have separate
courts of law and equity, and they have kept up the line of dis-
tinction between these as pointedly, perhaps I might say, as fastidi-
ously, as it was done in *England* before Lord MANSFIELD's time,
and certainly more than is done now.   We, on the contrary, exer-
cise the two jurisdictions by the same court and jury, at the same
time, and instead of giving a verdict and judgment against a man
in one court, with a full knowledge that he will be relieved in
another, we, if he is entitled to relief, give it at once in the trial of
the cause.   One of the most marked distinctions arising from this
is, that a writing, especially if under seal, is received in their courts
of law, (except a receipt, and why it is an exception I do not know,
though perhaps they do.)   But, mistake or fraud must be proved
there, and relieved against in Chancery: here it is done in a court
of law.

There was a time in the history of the law when, like every thing
else of that day, it was a system of metaphysics and logic; and,
when the cause was decided without the slightest regard to its jus-
tice, solely on the technical accuracy of the pleaders on the several
sides: defect of form in the plea, was defect of right in him who
used it.   This period of juridical history, however, was in some re-
spects distinguished by great men, of great learning, and abounds
with information to the student.   At the time I speak of, payment
of debt and interest on a bond, the next day after it fell due, was no
defence in a court of law; nay, it was no defence to prove payment
without an acquittance before the day; nay, if you pleaded and
proved a payment, which was accepted in full of the debt, yet, you
failed unless your plea stated that you *paid it in full,* as well as
that it was accepted in full; or, perhaps, because you pleaded it as a
payment, when you ought to have pleaded it as an accord and satis-
faction.   An act of parliament or two, and the constant interference
of the Court of Chancery, granting relief, have changed this in a
great measure; but, it is not a century since it was solemnly decided,
that if a creditor, finding his debtor in failing circumstances, and
being afraid of losing his debt, proposed to give him a discharge in
full if he paid half the money, and the debtor borrowed the money,
and paid the one half on the day the bond fell due, and got an ac-
quittance in terms as explicit as the *English* language could afford,
yet, if sued, he must pay the rest of the debt; for, it was impossible,
say the court, payment of part could be a satisfaction of the whole:
but, if part was paid before the day, it was a good satisfaction of the
whole.   I mention this not from a general disrespect to the law or
lawyers of the days I speak of, but for another purpose.   It has,
alas! become too common for men of good character and principles,
but who trade on borrowed capital, to fail, and their creditors are
glad to receive fifty cents in the dollar, and give a discharge in full;
and I do not know the lawyer who would be hardy enough to deny

(Milliken and another *v.* Brown.)

the validity of such discharge, although given after the money was due, and although the discharge was not under seal, or although it might be doubtful whether it could more properly be called a receipt, or a release, or a covenant never to sue, if the meaning can be certainly ascertained, and no fraud, concealment, or mistake at the giving it, it is effectual. It avails little then, to go back to the last century, or further, to cite cases in which a matter was of validity, or effect, according as it was couched in this or that form. Universally the law is, or ought to be, that the meaning or intention of the parties is, if it can be distinctly known, to have effect, unless the intention contravenes some well established principle of law. I refer to *Wentz* v. *Dehaven*, 1 *Serg. & Rawle*, 312, as fully settling, that a seal is not necessary to a release of a debt, secured by the most formal sealed instrument. This case brings the law in this state to this: That a discharge, acquittance, or release, call it what you will, is as valid without a seal as with it; and, I know of no instrument which is not so, unless where a positive act of assembly requires a seal. The form of action, or the plea, may be different, but in some way, if plain and fair, it has effect.

It may be conceded, that *David Milliken* had no intention to release *John Brown* or *William Brown*, jr.; nay, there is no reason to believe that Dr. *Watson* expected, or even suspected any such result. The effect, if produced, is not from the words of the instrument or design of the parties; perhaps, there was no design to release any other than the one named, in any case, where such release has had that effect; yet, it did produce that effect from the earliest times of the law. In *Fitz. N. B.* 238, letter *M.*, if two are severally bound in statutes, and recognizee release the statutes to one of them, and then sue execution, they shall have *audita querela.* Hence, it would seem, relief was had, before chancery had assumed such jurisdiction. The same law is found in *Co. Lit.* 236; 9 *Co.* 270, *Needham's Case;* 5 *Co.* 52, *Heckinote's Case.* 1 *Ld. Raym.* 690, " Where a covenant is joint and several, a release to one is a release of all: like the case of joint trespassers, which is joint or several at the election of the plaintiff, but a release to one discharges all." And " there is no doubt but a release to one co-obligor is a release to both, in equity as well as at law." 1 *Atk.* 294. And it produced the same result, although there was an express proviso in the release that it should not discharge the co-obligor. 5 *Bac. Ab.* 703. For this he cites *Litt. Rep.* And in 2 *Dessaussure*, page 1, we find the case, where one of several co-obligors in a bond, and who was only a surety, obtained a release from the obligee, who afterwards assigned the bond to the state, whose indents had been lent; the state brought a suit in chancery against P. who had obtained the release. "It was," says RUTLEDGE, Justice, " objected, that the release was provisional, that the other obligors should still be bound, or it should have no effect. The release does not purport any thing of the kind; it is absolute, and the obligee, (who was attorney

(Milliken and another *v.* Brown.)

general,) must have known it would have the effect to release all of them. As to the idea, that the release was to be kept secret, and the co-obligors made responsible, it was absurd; because, if the bond had been sued, the defendant, P., must have been sued with the others, and his pleading the release would have been an effectual bar to a recovery against them all;" and he proceeds to show, that as the defendant had obtained his release fairly he was discharged, though thereby all the others were so also. So, if one of two judgment debtors, who is not bound as between themselves to pay more than half, pays all, the judgment cannot be kept alive to recover the other half for his use from the other. 9 *Mass.* 138. And if one of two debtors on a judgment is taken on a *Capias ad Satis-faciendum,* and discharged by the plaintiff, the judgment is gone as to the other. *Ibid.* And cases there cited.

It is true, some of the cases cited in the argument seem to put the discharge on some magical effect of a seal; but, it has been shown, that in this state at least, a seal is not necessary. The general position, that a release of one is a discharge of all, is not denied in any case: it is equally effectual at law and in equity. Has it not its foundation laid deeper than some of the cases suppose, in this, that where several persons have contracted together, and several of them are bound to one in a certain way, that one shall not of his own accord, or by collusion with one of them, change their several responsibilities? It is the same principle which, when four agree to go surety in a bond jointly and severally for one, and three sign it, and the bond is expressly left to be signed by the other, who never signs it, none are bound. *Pawling* v. *The United States,* 4 *Cranch,* 219. There would occur technical difficulties also. On a *Scire Facias* to reverse this judgment, could there be judgment for *John Watson* and against the others, or one of them? There is a judgment confessed against *William Brown,* jr. for one-third and interest till *April,* 1828; if this cause should go back, can there be another judgment against *John* for another one-third and interest till next year, and different executions against different persons in the same suit, for different and distinct sums? The arrangement with *Watson* and with *William Brown,* jr., if none with *Watson,* discharge *John Brown.*

Every body knows, that generally, an undivided interest in a farm, a house, a furnace, &c., will not sell as well in proportion as the whole will. Can *John Watson* and the plaintiff change the law, and sell the undivided interest of each of the other partners, against their consent, separately, for a judgment which bound the whole property? A rich partner might in this way, easily become owner of all the shares.

There may be hardship in this case; if there is, it was occasioned by very shameful conduct of one of the plaintiffs. There are some things the law will not permit. You cannot give a title in fee simple and restrain the right of selling, &c.; nor can a judgment credi-

(Milliken and another *v.* Brown.)

tor release onè of the defendants, and hold the others bound. Even a release of part of mortgaged premises, was a release of the whole, until an act of assembly of the 2d of *April*, 1822, was passed, allowing the mortgagee, on receiving a proportionable part of the mortgage money, to release a portion, and still recover the residue from the remaining mortgaged premises.

*Note.*—See 14 *Johns.* 330. One of several parties to a contract under seal, to perform certain work, releases by parol the other party from performing the work; this is valid.

Tod, J.—I am not able to concur. I take it, that the fact of the premature *Testatum* execution, unjustifiable as it was, must be thrown out of the case on this writ of error. The injury should be redressed by the proper form of action, in the name of the proper person. The damages ought not to fall entirely upon *Watson*, and the indemnity all to go to *John Brown.* Besides, from the case in 10 *Serg. & Rawle*, 188, the *Millikens* appear to have paid the penalty of the act by the complete loss of their security.

I agree, that in the case of a debt not yet payable, the creditor may, if he thinks fit, accept much less than his due, and give a valid discharge of the whole. But that, I apprehend, is only where the creditor intends to discharge the whole. Here, it is not pretended to be said, that either *Milliken*, who received, or *Watson*, who paid the third of the debt, had the least imagination of exonerating *John Brown* and *William Brown*, jr. from the other two-thirds. But it is supposed, that the law imperatively gives to the transaction an effect which the parties never meant, and that a release to one is a release to all. With some diffidence, and with great respect for the opinion of the court, I would hold, that a discharge of one joint debtor, on receiving his share of the debt, can operate an extinguishment and forfeiture of the residue, against the intent of the parties, only in case of a strictly technical and legal release under seal. All the authorities appear to be so. *Harrison* v. *Close*, 2 *Johns. Rep.* 448. *Ib.* 186. 2 *Salk.* 575. 2 *Saund.* 48. 9 *Johns. Rep.* 310. 8 *Johns. Rep.* 389. *Rowley* v. *Stoddard*, 7 *Johns. Rep.* 210, held, that on receiving part of a debt from a joint debtor, and discharging *him*, in order to produce the effect of discharging the other debtors, against the intent of the parties, the release must be technical and under seal; and that a mere receipt in full, can produce no such injurious consequence. After citing many authorities, the decision concludes, that it cannot be pretended that a receipt for part only, though expressed to be in full of all demands, must have the same operation as a release. There is a case, not cited at the bar, which appears to me to be strong. *Ruggles* v. *Patten*, 8 *Mass.* 480. An action against one of several joint promisers in a note of hand: the plea was *payment* by one of the promisers of three hundred and seventy-eight dollars, *made* and *received* in full of his, the said *Samuel's* quarter part, and that he, the payee, did then and

(Milliken and another *v.* Brown.)

there exonerate, acquit, and discharge the said *Samuel* from any further payment of the said note. Upon a general demurrer to this plea, the decision was in favour of the plaintiff, the court holding, that payment of part by one joint debtor effects no discharge of the others.

Indeed, I would be almost ready to say, that if instead of a bare receipt to *Watson* in full of his share, it had been a release to him under seal, still it would be against all equity that a party should be thus entrapped by his ignorance, and by the formality of a seal, into the loss of two-thirds of his debt. The very case came before a Court of Chancery, in *Kirby v. Taylor*, cited at the bar, 6 *Johns. Ch. Rep.* 242, where it was decided, that a release, under seal, given to one joint obligor, should discharge him only, and not the rest. And 2 *Com. Dig. Ch.* 4, *L.* 2, is express, that if a release goes beyond the intent of the parties, it shall be avoided in equity. In the argument of the counsel, inconveniences have been attempted to be shown, if one of several joint debtors could be permitted to pay his share and be discharged; and, it is said, that if *John* or *William Brown*, jr. should prove insolvent, and the other be compelled to pay the remaining four thousand dollars, he who should so pay, could not sue *Watson* for contribution, but would be barred by the receipt in full, signed by *Milliken*. Now, as to this matter, it seems to me, that there might be said to be some risk of loss to the *Millikens*, by discharging one of the debtors from the residue of the debt; but, that *John Brown* and *William Brown*, jr. could have no possible ground of just complaint, because they were exonerated for ever to the amount of two thousand dollars, whereas before, they were liable each one for the whole debt. And as to the law on this head, even the holder of an accommodation note, who has received a composition from, and who has covenanted not to sue the payee, for whose accommodation the note was made, may, notwithstanding, sue the maker, though on payment of it, he, the maker, will have a right of action against the payee. And if the holder release to the payee all claims in respect to the note, not knowing that he is a surety, this will not discharge the maker. *Chitty on Bills*, 381.

The doctrine relied on at the bar, of satisfaction by one joint trespasser, is not to the purpose. For there appears much difference between matters of contract and matters of tort. If two join in a battery of the person, or in a libel upon the character of another, and the party injured receives a sum of money from one in full satisfaction as to him thus paying; as the just amount of damages must be wholly uncertain, the law, therefore, perhaps, necessarily supposes, that a second satisfaction from another defendant, will be a double satisfaction for the same wrong. But it seems to me, if two men join to borrow one hundred dollars, and the lender accepting fifty dollars from one, gives him a receipt in full for his share, every one sees that the debt is but half paid; that whatever risk has been incurred in the case, has been incurred by the lender, and that any

(Milliken and another *v.* Brown.)

complaint of inconvenience by the man who did not pay, and who now is liable for fifty dollars only instead of a hundred, must be groundless. The case of *Wentz and Wife* v. *Dehaven's Executor*, 1 *Serg. & Rawle*, 312, seems not opposed to my opinion. It is rather in my favour. In that case, a discharge without a seal, was held sufficient against a mortgage, a sealed instrument. And the old rule of law of *unum quodque dissolvitur*, &c. was disregarded, in order to promote the equity of the case, and the intent of the parties. Here a new rule appears to be asked for, to give to a receipt the effect of a release, and to add a seal for the purpose of defeating the intent of the parties.

GIBSON, C. J.—It seems to me that this, like every other part of the common law retained in use, is founded not only in convenience, but justice. No case can be better fitted to illustrate this, than the one at bar. Two of three joint debtors are solvent, the third is insolvent; and, the creditor agrees, on sufficient consideration, to exonerate one of the two who are solvent entirely from liability. Now, the most sacred principles of justice require that this agreement be performed; and, it is admitted, that it ought to be performed. But how? By exacting, it is said, the remaining two-thirds from the remaining solvent debtor, and leaving him to his action for contribution against the debtor who had bought his peace; in other words, by permitting the creditor to collect the debt, not directly from the exonerated debtor, but from one who would in turn collect it from him, being substituted for the original creditor, and succeeding even to the equitable ownership of the judgment as a security. It is unnecessary to say how imperfect this would be. It would afford but little gratification to the debtor to know that his money had not gone directly, but circuitously into the pocket of one who had absolved him from the debt. Cases might undoubtedly be put, in which the justice of the rule would be less apparent; for instance, where the outgoing debtor has paid his proportion, as between the debtors themselves. Still there would be a degree of injustice in forcing them to settle nice and complicated equities, (in the present case depending on the winding up of a partnership,) in a proceeding with a stranger, and not between themselves; without which, it would be impossible to ascertain how much might be found for the creditor without jeoparding the exonerated debtor. In a court, proceeding according to common law forms, this would be impracticable; and, before a jury, even were the judgment as ductile as a decree in equity, intolerably inconvenient. If defendants might be compelled to conduct an underplot among themselves, judicial proceedings would be in perpetual danger of branching into forms too fantastic for use. An engagement to exonerate a joint debtor, therefore, must be made good in the only way known to the law— by relinquishing the debt. It seems to me, then, that the rule has a foundation more solid than the magic of a seal; and, although there

(Milliken and another *v.* Brown.)

are *dicta,* that it holds only in the case of a *technical*-release, 'yet, that is said not to distinguish a legal from an equitable release, but to indicate that there must be, not merely a covenant not to sue, which may in some cases be pleaded as a release; but an unqualified discharge from further liability.   Now, whatever may be the effect of accepting in satisfaction of the whole, a part of a debt, payable presently, it is unquestionable that prompt payment of part, when the debt was not demandable, is an available consideration even for a promise, and it is quite as certain, that a parol release is effectual in our courts of law.   By the way, the judges who decided *Wentz* v. *Dehaven,* were far from trampling on the common law.   It is well known that a majority of them entertained just notions of its obligation as well as a salutary fear of the evils inseparable from judicial legislation.   They but conformed their judgment to a common law principle modified as to circumstances by time, and the intervention of Courts of Chancery.   It is a property of this common law, which alone would render it more excellent in practice, than any code of ancient or modern date, that it gradually and imperceptibly yields to the form and pressure of the age, but never to force, without manifesting in the consequences, the violation it has suffered.   These remarks are subjoined, not with an expectation that they will add to the argument of Judge Huston, who has satisfactorily stated the grounds of the judgment, but, with great respect for the opinion of Judge Tod, who dissents, to vindicate the rule on which I put the cause to the jury.

Judgment affirmed.