## BURSON *against* KINCAID

A release by the plaintiff of the estate of a deceased surety from the lien of a judgment, will not operate as a release of the principal co-defendant, so as to give priority to subsequent judgment creditors of his, when it appears that the co-defendant assented to such release.

A release of one joint co-obligor is a release of all; but a release of an obligor in a joint and several obligation is not a release of all.

ERROR to the Common Pleas of *Green* county.

This was a feigned issue, joined in the court of Common Pleas of *Green* county, under the direction of the court, between *Isaac Burson* plaintiff and *William Kincaid*, *John Morrison* and *Benedict Horner* defendants, for the purpose of deciding whether the defendants were entitled to a preference in receiving from the sheriff of that county the money arising from a sale made by him of lands, the estate of *Dennis Cain*, which had been taken in execution.

On the 16th of January, 1826, a judgment was entered on the docket of the court of Common Pleas of *Green* county by the Prothonotary, upon a judgment bond in favor of *John Bell*, sr. against *Dennis Cain* and *John Cain* for a debt of three hundred dollars with interest from the 12th of the same month.   *John Cain* was merely a surety in this judgment for *Dennis.*   Some time after the entry of the judgment, *John Cain* the surety died: *Dennis Cain* the principal debtor surviving, who administered upon the estate of the deceased.   *Dennis Cain* after taking out letters of

administration, gave a warrant of attorney to, *Andrew Buchannan* an attorney of the same court, authorizing him to appear and enter or confess a judgment of revival on the above judgment against himself as the surviving defendant, and also against him as the administrator of *John Cain*, the deceased, which was accordingly done by an entry of June term, 1828, No. 52. On the 3d of March, 1829, *John Bell* the plaintiff, for value received, assigned this judgment to *Isaac Burson* the plaintiff in error, who afterwards, on the same day, under an agreement made with *Dennis Cain* the deceased, sealed and delivered a release in the following terms: "I, *Isaac Burson*, do hereby release and exonerate the above judgment (meaning the above mentioned) as to the estate of *John Cain* deceased. Witness my hand and seal the 3d March, 1829, and say it is to be no lien against the estate of *John Cain*, deceased."

ISAAC BURSON, [L. S.]

On the 31st of May, 1828, a judgment for one thousand dollars debt, with interest from the 28th of the same month, was entered upon the docket of the same court, against *Leonard Bevins* and *Dennis Cain*, in favor of *William Kincaid, John Morrison* and *Benedict M. Horner*, the defendants in this writ of error.

On the trial of the feigned issue, the counsel for the plaintiff put several points to the court below, upon which he prayed their direction to the jury. The second is the only one which was argued. It presents this question.—Did the release of *Isaac Burson*, given by the consent and approbation of *Dennis Cain* the surviving defendant in the judgment, and the administrator of *John Cain*, the deceased co-defendant and surety, release and discharge *Dennis Cain* or his estate from the lien and payment of the judgment?

Upon this point, the court below charged the jury, that "the release of one of the defendants by the judgment creditor, is a discharge of the other. He cannot release the one and hold the other bound. We cannot think it makes any difference (as between the parties to this issue) whether the one released was, in the original contract, a joint principal or surety: and although *Burson* may have been pursuaded to execute the release, by *Dennis Cain* and the legal representatives of *John Cain*, yet still the release is a discharge of the judgment, as respects the present defendants; and they have consequently a right to the money, which is the subject-matter of the controversy." A verdict and judgment were rendered for the defendants.

*Hawkins* for plaintiff in error.

It will not be controverted that as a general rule the release of one of two or more joint debtors, will discharge the rest. Like all

(Burson *v.* Kincaid.)

other general rules known, it will admit of exceptions. To operate in this way the release should be general. A mere release of the lien of the judgment ought not and cannot operate as a discharge of the debt. What particular form of words will constitute such release has not been judicially determined in this state, but there is a *dictum* of the Court in the case of the *Bank of Pennsylvania, &c.* v. *Winger & Reidebaugh,* 1 *Rawle,* 302, which is express, that a mere release of a lien will not discharge the debt. This case very much resembles the present one. *The Bank* had a judgment against *Winger* the principal debtor, and *Reidebaugh* the surety. *Reidebaugh's* land was sold, and the *Bank* believing that the property of *Winger* was sufficient to satisfy their claim, waived the right of priority in favor of a subsequent judgment creditor of *Reidebaugh.* In the language of the Chief Justice, it waived its preference in favor of a surety to pursue the principal—the very thing that a court of equity would have compelled it to do.

Admitting, however, that the release had been such an one as in point of form would extinguish the lien, will not the circumstance of its having been executed with the knowledge and by the request of *Dennis Cain,* take it out of the general rule, which has been established in relation to joint debtors? In discussing this question, two points arise, first, the effect of the release as between the parties themselves, second, the effect of it as between the parties and the releasor.

As between the parties themselves there can be no doubt. The very case on which the defendants rely, will shew that the rule does not apply to this case. The grounds upon which a release of one of two joint debtors is held to be a discharge of the other is, that it increases the responsibility of the remaining obligor *without his consent.* *Judge Huston,* in speaking of the rule that a release of one is a discharge of all, in the case of *Milliken* v. *Brown,* says, "Has it not its foundation laid deeper than some of the cases suppose, in this, that where several persons have contracted together, and several of them are bound to one, · in a certain way, that one shall not of his own accord, or by collusion with another, change the several responsibilities."

If, however, as in this case, the responsibility of *Dennis Cain* is increased by and with his consent, the release of the lien against the property of *John Cain,* cannot discharge the lien against *Dennis Cain.* On this point *Barrington* v. *The Bank of Washington,* 14 *S. & R.* 423, & *Speaker,* v. *U. States,* 9 *Cranch,* 26, were cited.

The second point is as clear as the first. How are third persons effected by this release? To shew that they were not effected, let it be taken for granted that *John Cain* were still living, and that his property had been sold, and the proceeds applied to the paymen

of this debt—how then would the case have stood, as between *John Cain* and the present defendants? Clearly *John Cain* would have been entitled to be substituted in the place of *Isaac Burson*, and on the sale of *Dennis Cain's* property would have been entitled to the proceeds in preference to the present defendants.   On this point *Fleming* v. *Beaver* 2 *Rawle*, 128, & 1 *Rawle* 295, were cited.

Before the release was executed *John Cain* the surety and releasee died.   The judgment bond on which the judgment was entered, was joint.   It is submitted whether by the death of *John Cain*, his estate was not discharged, at least so far as respects his personal property and other lands not lying within the county of *Green*, when the release was executed.   If it was discharged by his death, the release had nothing to operate upon.   And if it was discharged, the administrator as such, could by no act of his revive the judgment or continue the lien upon the real estate of *John Cain*. In support of this position a case decided by the Court of Appeals, *Va.* was cited, 2 *Wash. Rep.* 136, wherein relief was refused against the Executors of a deceased obligor, who was a surety in a joint bond.

*McGiffin* for the defendant in error referred to *Millikin* v. *Brown*, 1 *Rawle*, 391.

The opinion of the court was delivered by

KENNEDY, J.—It is evident, in this case, that the plaintiff was entitled to be first paid the amount of the judgment which had been assigned to him by *John Bell, Senior*, out of the moneys arising from the sale of *Dennis Cain's* land, against whom the judgment was, unless the court below were right in their direction to the jury, as to the effect of the release.   This judgment was entered on the 16th of January, 1826, with a stay of execution until the 12th day of October then next following.  The judgment of the defendants, under which they claim the money, was not entered until the 31st of May, 1828.   Consequently the judgment under which the plaintiff claimed, was the first lien upon the land sold by the sheriff; and could not cease to continue a lien, without some act of the plaintiff or his assignor annulling it, within less than five years, during which time the sale of the land was made. Indeed, the revival of this judgment by *Dennis Cain*, the defendant, at June term, 1828, would have been sufficient to have continued the lien of it five years longer from that time.

In the abstract it is certainly true, and a principle of law well settled, that if a creditor release one of two joint debtors, whether they are indebted upon a simple contract, bond or judgment, it will also be a discharge of the other from the debt.   Why is it so? because otherwise the whole burden of the debt would be thrown upon one of them instead of both, which would be directly contra-

(Burson *v.* Kincaid.)

ry to their undertaking and contract.   Upon the same principle it has been held, that if the obligee in a bond, given to him by two or more jointly, tear off the seal of one of the joint-obligors, or in any manner cancel the bond as to one of them, it discharges all the rest.   It was in its concoction, the joint bond of the whole; but the moment it is cancelled by the obligee, as to one of the obligors, it ceases to be the bond or deed of all.   In short, it ceases to be the same bond, if bond at all it can be called.   By the original contract, under which it was given, it was agreed, and made to be, the joint obligation of all; and without a new agreement between the same parties, it cannot be made the bond of a less number; at least, it cannot be changed and made the bond singly of any one or more of them, short of the whole number, without their consent.   To make it the bond of one instead of two, necessarily increases the weight of the obligation; and no man is to have an obligation imposed upon him without his consent.   But an obligee or covenantee may release one of two several obligors named in a bond, or one of two several covenantors in a deed, or cancel the bond or deed as to one, by tearing off his seal without the consent of the other, and for this reason, too, that it does not increase the responsibility of the other obligor or covenantor, or change in any manner the nature of his obligation or covenant.   It was the bond or deed of each singly before, and the obligee and covenantee had a right to look to either singly for the fulfilment of it, and the one, therefore, can in no wise be injured by cancelling the bond or deed as to the other.   See *Mathewson's case,* 5 *Co.* 44.

So it is well settled, that if the name of one of two or more joint-obligors be stricken out or erased, or his seal torn from a bond by the consent of the obligee and the other obligors, it shall cease to be the bond of him whose name is so stricken out or erased from it; but shall from that time be the bond of the others.   And for what reason?   Because it was their agreement that it should be so.   Their agreement alone, in this respect, without more, is equivalent to a new, and re-execution or re-delivery of the bond, as their act and deed.   A mere formal delivery or re-delivery of it is unnecessary.   *Barrington* v. *The Bank of Washington,* 14 *Serg. & Rawle,* 424. *Speaker* v. *The United States,* 9 *Cranch,* 28.

And this is upon the principle that they have assented to it, and if they were not held to be bound by the bond in this instance afterwards, it would be a reproach upon the law and the administration of justice; because it would be to permit the remaining joint obligors to violate most grossly their own agreement, and thereby to commit a most palpable fraud upon the obligee, and cheat him out of his money.

Now apply these principles to the case before the court, and can there be any doubt that the release ought to operate otherwise, or

(Burson *v.* Kincaid.)

have a different effect from what was expressly agreed on and intended by the parties. To the release in this case, the judgment creditor who gave it, the surviving defendant in the judgment and the administrator of the deceased defendant, were parties; and the release was given in pursuance of an agreement made by and between them. That *Dennis Cain,* the principal debtor, ought to be bound by his agreement, can admit of no doubt; and I presume that the court below thought so; for in giving their opinion to the jury, that the release was a discharge of the judgment, they qualify it by saying, "as respects the present defendants." But why shall it be a discharge of the judgment in favor of the present defendants? They were not parties to it; had no interest in it; and were not bound by it, or responsible for the amount of it, in any way. The release given by the plaintiff in this case, imposed no obligation upon the defendants; and was not intended to take from or deprive them of any right with which they were vested, or in the least to diminish the security which they had upon *Dennis Cain* for the payment of their judgment; nor can it have such an effect to decide that the lien of the plaintiff's judgment continued in full force upon the real estate of *Dennis Cain,* against the defendants, and all the world, notwithstanding the release. It is impossible to conceive in what way the defendants could have been prejudiced by this release, unless, indeed, under some circumstances, it might have been in their power to have compelled the plaintiffs to look to the real estate of *John Cain* for his debt, so as to leave them the advantage of securing their judgment out of the estate of *Dennis Cain,* or by paying or tendering to the plaintiff, the amount of his judgment, entitle themselves to be subrogated to his rights, in the collection of it; but under no circumstances that could have occurred, could this have been done. On the contrary, had *John Cain* continued to live, and been compelled to pay the plaintiff's judgment, I apprehend, that in equity, he would have been entitled to the benefit of it; not only against *Dennis Cain,* the principal debtor, but against the present defendants, for the purpose of reimbursing himself; and upon this principle, were he now living, after having paid the amount of it, would be entitled to claim it, out of the moneys arising from the sale of *Dennis Cain's* real estate, in preference to the defendants. *Fleming* v. *Beaver,* 2 *Rawle,* 131. *Cheesborough* v. *Millard,* 1 *Johns. Ch. Rep.* 413. *Hays* v. *Ward,* 4 *Johns. Ch. Rep.* 129. *Burrows* v. *McWharnet,* 1 *Desaus,* 409. *Miller* v. *Pendleton,* 4 *Hen. & Mundfr.* 436. Hence, in no correct view that can be taken of this case, can it be sustained, that the defendants are placed in a worse situation than they stood before, by giving full effect to this release, according to the agreement and the wishes of the parties at the time of making it. It was but a release, at most, of the real estate, late of *John Cain,* lying within *Green*

(Burson *v.* Kincaid.)

county, and owned by him at the time of entering the plaintiff's judgment: for as to the personal liability, and all the other real and personal estate of *John Cain,* his previous death released all that from the payment of this judgment.* And if *John Cain* was not the owner of any land or real estate upon which this judgment operated as a lien, the release produced no effect whatever; for by law, the entire responsibility of paying, devolved upon *Dennis Cain;* and he being the *real* debtor, and *John* having been merely his *surety,* even equity would not compel payment of the debt, out of *John's* estate in case of *Dennis'* insolvency and inability to pay. The case of *Millikin* v. *Brown,* 1 *Rawle,* 391, and the *insulated* expressions of the judge who delivered the opinion of the court in that case, have been quoted and relied on by the counsel for the defendant in error. There is nothing in the principle decided in that case, nor yet any thing said by the learned judge who delivered the opinion of the court, when viewed in reference to the case then before the court, or when taken in connection with all that he did say, that will support or warrant the direction of the court below in this case to the jury. The judge who delivered the opinion of the court in *Millikin* and *Brown,* in speaking of the effect in law of a release by the creditor to one of two or more joint debtors, that it would be a release of all, whether so intended or not, has reference only to what was the intention of the releasor and the releasee. Because he is then speaking of those cases where the other joint debtors, not named in the releases, were not consulted or made parties to the arrangements upon which the releases were founded. And the reason which he there, in page 399, assigns, for the principle by him laid down, shows clearly, that he was speaking of those cases where releases to one of the joint debtors had been given, without consulting and obtaining the consent of the others. He says the foundation of it consists "in this, that where several persons have contracted together, and several of them are bound to one in a certain way, that *one shall not, of his own accord,* or by collusion *with one of them,* change their several responsibilities;" implying, necessarily, that when it was done by the consent of all concerned, the effect would, and ought to be, in accordance with the intention of the parties, whatever that might be.

The judgment of the court below is reversed, and a *venire de novo* awarded, if it should be thought necessary to call a jury again, after the decision of this court on the question of law; which seems to have been the only thing that was contested. With respect to the matters of fact, there does not appear to be any controversy.

Judgment reversed, and a <em>venire de novo</em> awarded.

* See 2 *Saund. Rep.* 148, *n.* 4. *Lampton* v. *Collingwood,* 4 *Mod.* 315.