*972 ON THE MERITS.
There were two wills, but both operated on the same property.
There were two successions opened, but one and the same executor sufficed for both.
There were not two estates to be eared for, managed, administered, and finally delivered over to the heirs; there was but one.
The property was practically all community property. There were no debts.
The heirs under the two wills were the same, and the dispositions of the wills identical.
The husband died first and the entire community estate was inventoried in his succession.
It all passed into the hands of the executor, who was given seizin and dispensed from bond.
The widow in community died a year later and before the husband’s estate was settled.
The property appearing upon the inventory of her succession had been previously inventoried in that of her husband, except some-articles of jewelry, silverware, china and glassware, valued at three thousand eight hundred and fifty-eight dollars and fifty cents, conceded to be the separate property of the wife.
Both wills were attacked, as being in contravention of law, by the-grandchildren of the deceased, who were alike forced heirs and legatees under the wills.
In Succession of McCan, 48 An. 145, this court decreed the nullity of the wills.
This terminated the executorship and placed the heirs in possession of the estate.
"Whereupon the executor filed the duplicate accounts which are-under review on this appeal, and settled with the guardian of the-minors to the extent of delivering to her the property, assets and funds of the succession.
This is not a case where an executor has paid creditors, pursuant to an account, or tableau of distribution, duly approved. It is-merely a contest between the heirs and the executor as to the commissions the latter is entitled to under the law. The accounts filed and the judgments homologating the same are not questioned, except as to the commissions aforesaid.
*973 The question is a simple one of law. An executor’s commissions are fixed by the Code at two and one-half per cent., calculated upon the appraised value of the property as shown by the inventory, deducting bad debts and unproductive property. C. 0. 1683.
This is the compensation determined by the law for executors, and -courts are powerless alike to diminish or increase it.
It appears from the inventory taken in the succession of David 0. MeOan that all the property there listed belonged to the community, and that the husband owned no separate property.
It appears from the inventory taken in the succession of his widow, Hester O. MeOan, that all the property there listed belonged <• to the community, except the jewelry, silverware, etc., hereinbefore mentioned as being the separate property of the wife.
The property, then, owned by David 0. MeOan and his wife in community, which passed into the hands of the executor, is as follows:
In the parish of Orleans. $1,396,699 70
In the parish of Plaquemines. 55,000 00
In the parish of Iberville. 1,000 00
Total community property. $1,452,699 70
Now add to this the value of the wife’s separate property, as same appears upon the inventory taken in her succession. 3,858 50
And now we have a grand total of. $1,456,558 20
Upon which the executor was entitled to commissions of two and •one-half pet centum,, or thirty-six thousand four hundred and thirteen dollars and ninety-five cents.
From the accounts filed in the two successions, we find the executor has paid himself commissions as follows:
August 1,1894, three checks aggregating. $36,292 49
July 20.1895, two cheeks aggregating. 17,892 03
December 20, 1895, one check.. 14,676 00
Total commissions charged and received. $68,859 52
This sum is thirty-two thousand four hundred and forty-five dollars and fifty-seven cents in excess of his legal commissions.
The fact that in the foregoing calculation no deduction has been made for the executor’s commissions on account of bad debts and unproductive property (if there were such) is a circumstance of which he can not complain.
The executor’s overcharge of commissions is attributable to two errors into which he has fallen:
*974 First, that he was legally entitled to charge 2l% per cent, commissions upon the property appearing on the inventory taken in the succession of Mrs. Hester 0. McOan, notwithstanding he had previously charged his full commissions upon the same property as inventoried in the succession of her deceased husband.
We hold this can not be done.
The administration of the succession of the deceased husband carried with it the administration of the community, and there can be but one charge for executor’s commissions against the community property. Baldwin vs. Carleton, 11 R. 109; Succession of McLean, 12 An. 222; Succession of Lamm, 40 An. 312; Millaudon vs. Cajus, Executor, 9 La. 307; Succession of Milne, 1 R. 400.
Second, that he was entitled to charge tec per cent, on one hundred and forty-six thousand seven hundred and fifty dollars and seventy-one cents interest collected on mortgage notes, bonds, etc.,, owned by the successions. While this charge appears upon the account only as commissions paid to H. H. Hall, testamentary executor, his counsel in their brief explain it as above, and seek to justify it upon the ground that under the McOan wills Mr. Hall was not only executor, but trustee or qwasí-tutor to the minors. Upon the theory that the commissions of a tutor are ten per cent, of the revenues of the minors, this charge is made. Mr. Hall was not the tutor of these minors. He was never appointed, recognized or qualified as such. Their grandmother, Mrs. Mary F. Tobin, was first their tutrix, and afterward, their mother, Mrs. Mary G. T. Steinpel, became such. We hold the charge to be untenable. Succession of Milmo, 47 An. 126. The ingenuity of argument by which counsel for the executor seek to uphold this pretension, while eliciting our admiration can not receive our sanction. Conceding that this-administration has been advantageous to the estate, the compensation the executor is permitted to receive therefor is defined and limited by the law. His right to receive this compensation in full will be rigidly upheld; his demand for more as rigidly denied. See Succession of Milne, 1 R. 400; Succession of Sprowl, 21 An. 544; Succession of Turnell, 34 An. 888; Baldwin’s Executor vs. Carleton, 15 La. 394.
But it is insisted, on behalf of the executor, that if it be true the commissions he has charged and paid himself are excessive, it is too-late now for the heirs to have the same corrected.
*975 This insistence is pi-edicated upon the judgments homologating the accounts — one in each succession — filed by the executor prior to his final account, and upon the provisions of O. P. 1004, which counsel for the executor interpret to mean that in a case of accounting like-the present one, unless the heirs, within three days after the account is rendered, file written objections thereto, they can not be heard) subsequently, in an appeal from a judgment homologating the account, to raise objections thereto.
The former is urged in the nature of res adjudícala and is sought-to be erected as a barrier against any inquiry touching the executor’s right to charge two and a half per cent, commissions on the-appraised value of the property inventoried in the succession of Mrs. Hester O. McOan, even though he had charged like commissions-upon the same property in the succession of her predeceased husband.
And the latter is leveled particularly against inquiry into the item of fourteen thousand six hundred and seventy-five dollars, which the executor charged as trustee or quasi-tutor’s commissions of ten per cent, on one hundred and forty-six thousand ssven hundred and fifty dollars and seventy-one cents collected as interest on mortgage-notes and bonds.
In the succession of the husband, the executor filed an account of his administration on July 14, 1894. There is no item of commissions paid himself entered on this account, but at the close of the account is this statement: “Prom sum total of funds and property on hand will be deducted the executor’s commission of two and one-half per cent, upon the amount of the inventory.
This account, it is claimed, was unopposed, was homologated, was not appealed fi’om, and is res judicata.
Whether it be res judicata or not as against these minor heirs, it is not necessary to decide. But, conceding it to be res judicata, it is only so as so to matters of receipt and disbursement actually made and entered upon the account, and the executor’s commissions was not one of these. On the contrary, it is distinctly stated “he will” deduct his commissions, “ he will ” pay himself. This was, clearly, something to be done after the account was filed, and something to form the subject matter, in part, of a future account, where it could be resisted or not, as the interest of the minors might then appear.
*976 The only other account filed in the succession of D. 0. McCan was the one of January 6, 1896, from the judgment homologating which, on February 14, 1896, this appeal was within the year taken.
In the succession of the wife, the executor filed an account on July 11, 1896.
The succession was pending in a different division of the Civil District Court of Orleans parish, and before a different judge. Yet, in his account filed therein on July 11, 1895, the executor puts down as an expenditure, under date of August 1, 1894, the commissions (thirty-six thousand two hundred and ninety-two dollars and forty-nine cents) which he had stated in his account filed in the husband’s succession on July 14, 1894, he would deduct from the funds and property on hand, as shown by the inventory of that succession.
This account of July 11, 1896, filed in the wife’s succession, was homologated December 2, 1896.
It is difficult to see how this judgment of homologation in the wife’s succession can have the effect of res judicata as to commissions due the executor in the succession of the husband pending in a different court, even though it could be pleaded as against the minor heirs herein.
At the close of this account, filed in the wife’s succession on July 11, 1895, the executor states he “ will deduct his commission of seventeen thousand eight hundred and ninety-two dollars and three cents,” being two and a half per cent, upon the amouut of inventory of the wife’s succession. This statement was written into the account on July 10, 1895, and the account, itself, was filed the next day. The judgment homologating this account was signed December 2, 1895, but it brought the administration of the succession down only to the date of the rendition of the account — June 29, 1895, the date of the last entry thereon.
The executor’s commission of seventeen thousand eight hundred and ninety-two dollars and three cents was not actually paid until July 20, 1895 (some time after the filing of the account), and forms the subject matter, in part, of the second and last account filed in the wife’s succession.
Turning, then, to this second account, we find the entry of this charge, under the head of disbursements, on the date of July 20, 1895. This is the account filed January 6, 1896, from the judgment homologating which this appeal is taken.
*977 Yet it is claimed that the judgment of December 2, 1895, on the account of July 11, 1895, is conclusive of this charge of seventeen thousand eight hundred and ninety-two dollars and three cents, the executor’s commissions in the wife’s succession.
We can not hold it so. The manner in which it is presented in the the account of January 6, 1896, shows it was not intended to be concluded by the judgment on the account of July 11, 1895, and it was, and is, as fully open to question and dispute as any other item on the account of January 6, 1896.
This is verified by the fact that the first two items on the account of January 6 show the bringing forward, to the new account, of the exact balance of sixty-five thousand six hundred and nineteen dollars and nine cents in money, with which the account of July 11, 1895, ended, without' any deduction therefrom of the executor’s commissions of seventeen thousand eight hundred and ninety-two dollars and three cents,- which it is now claimed were settled and allowed by the former account and the judgment based thereon.
Nor can we sustain the contention that the item of fourteen thousand six hundred and seventy-five dollars charged on the last account can not be inquired into on this appeal, because objection thereto in writing was not filed by the heirs within three days after the filing of the account. Authorities hereinbefore cited sustain the right of appeal from a judgment of homologation, even though the same has not been formally opposed. See also Succession of Mouton, 23 An. 527.
The object of appeal from such a judgment is to test the sufficiency of the evidence adduced in support of the account, or to-apply to the account as made up and approved the test of the law itself. It may be assimilated to an appeal from a judgment making final a default taken in a case under our practice.
In the instant case it is claimed by appellant that the evidence adduced by the executor on the homologation of his account does not sustain the charge of fourteen thousand six hundred and seventy-five dollars, and also that the charge itself is without warrant in law. The appeal was taken within the year. We hold the charge is reviewable here.
Where, on an account filed by an executor, there are charges in favor of himself unauthorized by law, the same must be considered *978 still as money in his hands as executor, for which he is accountable. Baldwin’s Executor vs. Carleton, 15 La. 395.
Nor do we consider Art. 1004 of the Code of Practice applicable to this case. The executor’s account filed in these successions on January 6, 1896, can hardly be considered as having been filed in obedience to an order of court on the demand of the heirs for an accounting and settlement, such as contemplated by that article. The petition to revoke the wills was filed December 3, 1894. It is true there was a prayer for an account and settlement, but on April 4, 1895, there was judgment in the lower court, rejecting the demand for revocation and for account, and though this judgment was reversed on appeal, ihe decree of this court, while directing the heirs to be put into possession of the estate and annulling the wills, did not specifically order the executor to file his account. Besides the judgment of this court did not become final until February 10, 1896, whereas the executor filed his account January 6, 1896. In his petition accompanying the account he refers to no order of court, but merely states “that he files herewith an account of his executorship from the date of the filing of the last account herein up to the 1st of January, 1896,” and his prayer is that the account be published, the attorney in fact of the guardian be cited and that the account be homologated and confirmed — all as though it was a mere ordinary or annual account of his administration. There was no prayer for acquittance and discharge as executor upon settlement with the heirs, as there would have been had he been rendering a final account to them upon the order of court on the demand to turn over the estate.
The wife’s share of the community property having been administered in the husband’s succession, and the executor having charged and received his commissions in full thereon in that succession, he can not be permitted to make another charge of two and one-half per cent, commission upon the same property, merely because of the fact that when the wife died the inventory taken in her succession included the same property. To sanction this would be to allow the executor five per cent, commissions on the wife’s share of the community property, when the law permits a charge of only two and one-half per cent, as compensation for his administration of such property.
Pull justice is done the executor when he is allowed two and one- *979 half per cent, upon the total appraised value of the community property, plus two and one-half per cent, upon the value of the wife’s separate property, as shown on the inventory of her succession.
Therefore, treating these successions as one for the purpose of this decree, it is ordered and adjudged that the claim of the executor, H. H. Hall, for commissions in excess of thirty-six thousand four hundred and fourteen dollars and seventy cents ($86,414.70) be rejected and disallowed; that the judgments appealed from be amended so as to reduce his commissions in the two successions to that sum, and that, as thus amended, they be and are hereby affirmed, with costs of appeal to be taxed against the executor individually.