Tilghman C. J.
David Dehaven executor of John Dehaven, brought suit against Mathias Wentz and Lydia his wife, on a mortgage given by them to the plaintiff’s testator, who was the father of Lydia Wentz. The defendants gave in evidence the following writing, executed by John Dehaven, in the presence of two subscribing witnesses. [Here the Chief Justice read the writing.] It was contended, on the part of the plaintiff, and so decided by the court below, that this writing was not a discharge of any part of the mortgage debt, principal or interest, and that for two reasons : 1st. Because it had no seal; 2d. Because in its terms it did not import a release, but only an intention to release.
1. It is an ancient principle of the common law, that no contract can be dissolved but by the same solemnity with which it was created. A contract under seal, therefore, cannot be discharged without a release under seal. It was no plea to a bond, with condition for the payment of money on a certain day, that the money was paid either before or after the day, unless accompanied with an acquittance under seal. Payment at the day, indeed, was a good plea, because, the condition being performed, the forfeiture was prevented. But although there might have been some reason in this rule, at a time when contracts were few, and great weight was attached to the solemnity of a seal, yet it was found extremely inconvenient, and not very reasonable, at á more advanced period, when, from an increased population and extended commerce, contracts were multiplied, and seals less regarded. Accordingly, whenever a debt was paid, courts of equity gave relief, without regarding whether payment was made strictly according to the condition, or with, or without, acquittance; and, at length, by stat. 4 Ann. ch. 16. sec. 12. the courts of law were permitted to exercise the same authority. But in this commonwealth, where, for want of courts of equity, the courts of law have assumed chancery powers, payment at any *317 time before the action brought, though without an acquittance, was always a good plea. This has not been denied; but it is said, that where there has been no payment or satisfaction., an obligation under seal will not be considered as released, either at law or in equity, without an' acquittance under seal, unless the obligation is given up. But it appears to me, that this is too broad a position. It is certain, indeed, that if the obligee declares by parol, that he forgives the debt, and delivers the bond to the obligor, the debt is extinguished; but it does not follow that giving up the bond is essential. A declaration in writing that the debt is forgiven, is as certain proof of an intent to extinguish the debt, as a parol declaration and delivery of the bond. And I know of no technical difficulty in the way of the extinguishment. A promise to pay money is very different from forgiving the payment of money. The promise is not obligatory without a consideration ; but no consideration is necessary for the forgiving of a debt. A mortgage, although in form a conveyance of land, is in substance but a security for the payment of money; and the debt being paid, or in any other manner extinguished, the mortgagee becomes a trustee for the mortgagor. It is laid down by Lord Mansfield in general terms, in Martin v. Mowlin, 2 Burr. 969. 979, that if a mortgage debt is forgiven, only by parol, the mortgagee becomes a trustee for the mortgagor, for the land. The debt is the principal, and the land the accessary. I do not think it necessary, however, to decide, whether a parol forgiving of a bond debt, without delivery of the bond, would be an extinguishment in equity, because the case before us is much stronger. It is not a parol, but a xuritten declaration, attested by two witnesses, and accompanied with delivery of the writing to the party in whose favour it was to operate. It is very material too, that the operation is in favour of a daughter and her husband, and may fairly be considered as an advancement made to a child. Natural affection is a good consideration to raise an use. And supposing (as I will for the present) that the writing contains a clear and unequivocal relinquishment of the debt, it would be most unjust, and against all good conscience, if, after a lapse of twelve years, during which, the mortgagors i elied on the release, and regulated their affairs accordingly, the executor of the mortgagee were permitted to recover both principal and interest. For it is to be observed, that .the *318 mortgagee himself, true to his word, never demanded payment of either.
2. Thus far I have taken for granted, that the writing shows ah intent to forgive the debt absolutely. If it does not, the defendant has no ground to stand upon. That point, therefore, must be considered. At first sight of this instrument, it strikes us that it is attended with considerable solemnity. It begins, This is to certify, — and it is attested by two subscribing witnesses. A thing that is certified is meant to be communicated to others: What then could be John Dehaven’s meaning? Did he only mean to make known, that although it was his present intention to forgive this debt, yet he retained the power to alter his mind, and demand payment ? It would have Hardly been worth while to call witnesses to this, and to deliver the paper to his son-in-law; because, if it was to have no operation, it was of no value. Although the expressions, in strict construction, go no further than an intent, yet I think it would not be straining them too far, to construe them as an absolute gift, for the benefit of a child. If there is an obscurity in the words, the rule is, that they should be construed against the speaker, and in favour of the persons to whom spoken. Yet it is a case on which light might be thrown from extrinsic circumstances; such as the relationship of the parties, the fortune of the mortgagee, the number of his children, the advances made to them, and perhaps subsequent transactions between mortgagor and mortgagee. The matter might, under all these circumstances, have been submitted to the jury, if the court had thought proper; but I am by no means for taking from the court the right of deciding on the construction of a writing, where no extraneous facts are necessary to be taken into consideration. On the contrary, I hold it to be of the utmost importance, that this right should be firmly asserted and never relinquished. The court might, or might not, have submitted this writing to the jury, according to their discretion. But at all events, there appears to me to be error in the charge. For, taking the case as it stands on the bill of exceptions, stripped of every fact but that of the relationship of the parties, I should construe the writing as an absolute forgiving of the debt. I am, therefore, of opinion, that the judgment should be reversed, and a venire de novo awarded.
*319 Yeates J.
The question before us does not depend on the technical rules of pleading a release. It certainly must be under seal, to enable a defendant to plead it in bar against a deed. The true point in dispute is, was the instrument of 1st September, 1802, a valid contract, binding on the party signing it, and his personal representatives ? It was the deliberate voluntary act of the plaintiff’s testator, subscribed by him in the presence of witnesses, “ certifying that he intended to “ give up the mortgage executed by the son-in-law and his “ daughter, as he never intended to demand it from them, “ nor any part of the interest due, and to become due at any " time.” The delivery of the paper to the mortgagors excluded every idea of the testator having a power to revoke his engagement, and no circumstances have been shewn, which would tend to establish that he thought he had such a power. He has not declared at any time that his mind was changed, and although he survived his signature above ten years, we cannot collect from any thing disclosed on the trial, that he claimed any part of the principal or interest. This instrument, therefore, in my opinion, was a valid contract, and ought to have its fair operation against the mortgagee, under the words and spirit of the old defalcation act of 1705. Its plain and obvious meaning was, to forgive the debt according to the expressions of Lord Mansfield, already cited in Martin ex dem. Weston v. Mowlin, (2 Burr. 978, 979.) by way of advancement to his daughter and her husband. “ Whatever will give the money secured by the mort- “ gage, will carry the mortgaged premises along with it to “ every purpose. The forgiving the debt will draw the “ lands after it, as a consequence. It will do it though the « debt be only forgiven by parol." I cannot conceive that this writing is susceptible of any other construction. I am therefore of opinion, that the judgment below be reversed, and a new trial be awarded.
'
Brackenridge J. concurred.
Judgment reversed, and a venire de novo awarded.