# Deardorff's Appeal.

After an estate has been settled and releases executed by the legatees to the executor, which have been acquiesced in for a number of years, and until the executor's death, the accounts will not be opened, and the representative of the executor compelled to account according to a strict calculation of interest.

APPEAL from the decree of the orphans' court of *York* county, upon the settlement of the estate of Jacob Deardorff, deceased.

The facts of the case are sufficiently stated in the opinion of the Court.

*Barnitz*, for the appellant.
*Evans*, for the appellees.

The opinion of the Court was delivered by

SERJEANT, J.—It appears that the testator, Jacob Deardorff, made his will in the year 1798, and thereby bequeathed specific pecuniary legacies to his numerous children, payable at different periods, and made them also residuary legatees. He appointed Isaac Deardorff and another, his executors, who proved the will and administered. Various payments on account were made from time to time by the executors, to the different children, some of whom had removed from the state, till at length, settlements were made with eight of them, and their releases given to the executors under seal, reciting the will and legacies, specific and residuary, and acknowledging the payments of certain sums in full, and thereby releasing all legacies, dues, duties and demands, whatsoever. One of them, Rebecca, released only her claim on account of her specific legacy. There were three who did not release. These releases were given at various times, from 1810 to 1822, when the releasors were of mature age, the latest being dated in 1822. In 1822, Isaac Deardorff settled his account in the orphans' court, and soon afterwards died. In 1835, proceedings were commenced against his executor, George Deardorff, and auditors were appointed, who disregarded all these releases, and calculated interest accounts respectively to the times of the first payments, deducted the payments, and again calculated interest on the balances, in the ordinary mode of calculation, thereby charging the appellant with various amounts, from less than 12, to upwards of 300 dollars in favour of the respective legatees. One of the legatees who released, was found to be overpaid.

It does not appear on this record, at whose instance the executor was cited, or who are urging an account; but it is a matter of very considerable moment, not only to the respondent, but to executors and others generally, if releases given under circumstances like the present, are to be treated as nullities, and executors who have paid over moneys to legatees on the faith of them, are, at a remote period, to be charged on a strict calculation of interest, for amounts, which they must have considered had been long since settled and determined. The general rule at law is, that where a party having a claim, thinks fit to release it, such release is binding. Formerly, releases were construed with much nicety and great strictness, and being considered as the deed or grant of the party, were, according to the rule of law, taken strongest against the releasor. They now, however, receive such interpretation as other grants and agreements, and are favoured by the judges, as tending to repose and quietness. 5 *Bac. Abr.* 681, *and cases cited.* A release is good without any consideration. Coe. *v.* Hutton, 1 *Serg. & Rawle* 408. Relief against a release, it is true, is given both by courts of law and equity, in the same manner as against other contracts, under particular circumstances; as where it is in evidence that it was obtained by fraud, or misrepresenta-

[Dcardorff's Appeal.]

tion, *suppressio veri,* or *suggestio falsi,* or has been executed by one ignorant of his rights, and not in a situation to inform himself of them.   So, when undue advantage is taken of the weakness or necessities of the party, or when there exists a confidential personal relation, as if obtained by the guardian from his ward, shortly after coming of age, or by an attorney from his client, or by a trustee from *cestui que trust.*   These, however, constitute exceptions to the rule, founded on special circumstances, and not the rule itself.   In the case before us, the releasors were of mature age, capable of judging of their rights, and of settling and adjusting claims, and of executing releases on receiving payment of what they deemed just; and the executors were competent to receive them.   The parties have now acquiesced, some of them for upwards of twenty years, and all for upwards of thirteen years, and till long after the death of the executor, who must have died in the belief that these accounts were settled, and that his estate was at his own disposal, freed from any liability or claim on account of them.  Should such releases be now treated as of no validity, and strict calculation of interest be gone into, no executor could have settled up his affairs safely without a lawsuit for each legacy; for, until the new code of the year 1834, no legacy was recoverable, except by an action at law in the court of common pleas, and the statutes of limitation did not run.   Some of these legatees lived out of the state; it was not the duty of the executor to follow them, and pay the legacies.  It was their duty to demand them.   For aught we know, the executor may have had the money lying by him unemployed, waiting for them; and various other reasons may be suggested, why he should not in equity have been charged with such calculation of interest.   It has been common for executors, who were anxious to settle estates and pay over the money in their hands, to do so, and take releases; and the act of the 15th of April 1828, authorizes them, as well as guardians and others, to have such releases acknowledged and recorded.   Chancery would not open an account for such purpose after a lapse of years, and after the death of the accountant.  To use the language similar to that of C. J. Tilghman, in the case of Wentz *v.* Dehaven, 1 *Serg. & Rawle* 317, it would be most unjust, and against all good conscience, if, after a lapse of thirteen and more years, during which, the releasee and his family relied on these releases, and regulated their affairs accordingly, the account is to be opened and resettled, the releases treated as nullities, and that without a single circumstance shown, warranting the interference of a court of law or equity, to overthrow the arrangements formerly made by the parties themselves, and so long acquiesced in.   We are, therefore, of opinion, that the court erred in confirming the report of the auditors; that the releases must be deemed binding and conclusive, and that, as respects those only who have not released, the report of the auditors ought to have been confirmed by the court.

-  Decree reversed as to Daniel, Jacob, John, Samuel, Hannah,

VI.—V

Peter, Abraham and Benjamin Deardorff; and confirmed as to the rest, viz: Rebecca, Mary and Elizabeth Deardorff.