Mr. Chief Justice Sharkey
delivered the opinion of the court.
On the 10th of May, 1839, McCorkle sold to Brown and Bybee a section of land for $8000, one half of which was paid in hand, and the balance secured by a promissory note payable in twelve months. McCorkle executed a bond conditioned to make title if the note should be paid at or before maturity, and the bond delivered up. On the 16th of May, 1839, at the joint request of Brown and Bybee, McCorkle by deed conveyed the north-east quarter of the section to General Tate, and the receipt of the deed was acknowledged by Brown and Bybee, by an indorsement on the bond in part discharge thereof. On the *174 28th of May, Brown and Bybee agreed on a partition of the section, by which Brown was to have the west half, provided he paid the balance of the purchase-money to MeCorkle, and Bybee was to have the south-east quarter, for $2000, which sum he had paid on the original purchase. Brown therefore gave a relinquishment for this quarter section, and authorized MeCorkle to give to Bybee alone, a deed. Afterwards, MeCorkle, at the request of Brown alone, conveyed to Kelly sixty-eight acres of the west half, and agreed to convey ten acres more to Coghill. These parcels of land were conveyed in order to enable Brown to pay part of the purchase-money, $1600 of which he did pay, leaving the balance of the $4000 note unpaid. At the maturity of the note, Brown was solvent, but has since become insolvent, and this bill was filed to coerce a specific performance of the contract, and, in case of a failure to pay the money, the 'prayer is, that the remainder of the west half, after deducting the seventy-eight acres conveyed at the request of Brown, and also the south-east quarter owned by Bybee, be sold to pay the balance remaining unpaid. So far as Brown is concerned, the complainant’s right is not contested, but Bybee resists the complainant’s right to resort to him, or to subject the south-east quarter of the section to the payment of the residue of the purchase-money. His defence rests upon two grounds; first, the inability of MeCorkle to convey according to his contract; second, that he has released Bybee, as well as the lien on his land, by his acquiescence in the agreement between Brown and Bybee, by which the former agreed to pay the residue of the purchase-money.
On the first point it is contended that MeCorkle, by the conveyance of the seventy-eight acres, part of the west half of the section, at the request of Brown alone, has placed it out of his power to fulfil his contract, which was to convey to Brown and Bybee jointly, and that he thereby committed a fraud on Bybee. The doctrine is then invoked, that a specific performance will not be decreed unless the party who seeks it is in a condition to perform his part of the contract. This is the general rule, as laid down in the case of Morgan v. Morgan, and the other au *175 thorities cited, and its correctness will not be questioned, It results from the plainest principles of equity. Where there are mutual obligations, the party who seeks the aid of a court of equity, must show that he is ready and willing to do justice before he can exact it of others. But equity does not exact more than justice, and it is perfectly manifest that if a court of equity were to require, in all cases, a literal performance on the part of the complainant, it would give the defendant an undue advantage. Equity must afford equal protection to both parties ; hence it does not, in all cases, require a complainant seeking to coerce performance, to show a performance on his part, or even an ability to perform literally ; but he must show that he has not been in default, and that he has taken all proper steps towards performance on his part; and if the noncompliance does not go to the essence of the contract, relief will be granted. 1 Story’s Equity, § 771. And it is further laid down, that if a man has performed a valuable part of an agreement, and is in no default for not performing the residue, then it is but reasonable that he should have a specific execution of the other part of his contract; or at least should recover back what he has paid so that he may not be loser. Ib. $ 772. On this subject Judge Story has forcibly expressed himself in this language: “Where the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with; still, if there has not been gross negligence in the party, and it is conscientious that the agreement should be performed; and if compensation may be made for any injury occasioned by the noncompliance with the strict terms; in all such cases courts of equity will interfere, and decree a specific performance. For the doctrine of courts of equity is not forfeiture, but compensation; and nothing but such a decree will, in such cases, do entire justice between the parties.” Ib. § 775. This was the doctrine of Lord Redesdale in Davis v. Hone, 2 Sch. & Lef. 347. And again, in the case of Lennon v. Napper, Ib. 684, the same learned judge field that where a party was not entitled to a remedy at law, in consequence of an inability to make the proper averments of performance, a court of *176 equity might still give relief if he had acted fairly. It seems, then, that the rule is to be taken with qualifications. And now let us make an application of the law to the facts of this case. McCorkle, it is true, is now unable to convey seventy-eight acres of the west half of the section; but does this inability result from his default? Has he been guilty of gross negligence, or bad faith ? Or does his inability to convey go to the essence of the contract, and operate to the prejudice of the other party ? This case has been argued as though it was a controversy between Bybee alone and McCorkle. It is said that if Bybee pays the money he cannot get a title; the rights of Brown have been entirely overlooked. Before it was urged that By bee could not get a title to the whole of the land on payment of the residue of the purchase-money, his right to it ought to have been shown. It must be remembered that Brown has already paid nearly half the amount due, and on payment of the balance Brown would be entitled to so much of the land as he had paid for. Now we must suppose the west half of the section, three hundred and twenty acres, was worth $4000. If Bybee were to pay all that was left unpaid by Brown, he would not be entitled to the whole of the residue of the land, after deducting the seventy-eight acres sold by Brown. He is therefore complaining that McCorkle cannot make title without a right in himself to demand, or to receive, that title. It is plain, then, that Bybee, by paying the purchase-money, could have got all that he was entitled conscientiously to receive. Brown cannot, nor does he complain that injustice is done to him. At his request McCorkle conveyed seventy-eight acres. On that he claims no lien; that he relinquished. A decree of specific performance, then, does but entire justice between the parties. But there is an additional consideration. McCorkle, at the request of both parties, conveyed'away the north-east quarter; he performed that much of his agreement, and relinquished his security on that part, taking the three remaining quarters as security for the whole. By that conveyance he" was prejudiced by the act of the respondents, and could not be placed in staty quo, and in such cases equity will compel specific performance. 1 Story’s Eq. *177 §772. No act of bad faith is fixed on McCorkle. His conveyance of the seventy-eight acres was in effect authorized by the agreement between Brown and Bybee, which was a partition to be absolute on payment of the purchase-money. Bybee could claim no further interest in the matter than that the land should remain as a security for the debt; in diminishing the quantity of land on which the security operated, the debt was also diminished in an exact proportion, by the application of the money the land sold for to the payment of the debt for which it was liable; and the security now bears the same proportion to the debt which it did at first. Bybee’s risk has been in no way increased. The acts of McCorkle seem to have been rather in compliance with, than in violation of his contract. By the contract each vendee acquired an equity to an undivided portion of the land, and the one cannot claim the whole when a part of the money has been paid by the other. McCorkle retained a lien on the whole of the land, and he does not ask that it shall be enforced against one to the prejudice of the other. To refuse him the benefit of that lien, would be unjust to him, without any just claim to such exemption by the other parties.
In the next place we are to inquire whether McCorkle has released Bybee, and also the lien on his land by his acquiescence in the contract of partition between Brown and Bybee. No express release is urged; but it is said that it must be implied from circumstances, the first of which is, that he knew of the contract; and the second is, that at the request of Brown alone he conveyed the seventy-eight acres. We admit the doctrine that a party may waive his right to call for a specific performance. This was admitted in the case of Price v. Dyer, 17 Vesey, 356, but it was said that a parol waiver would not bar a specific performance, unless it was clearly and distinctly proved. In that case a new contract had been made, which materially changed the stipulations of the first, and yet it was decided that the first was not thereby abandoned. It must be perfectly clear that no implied waiver, as between the vendor and vendee, can operate to defeat an express lien, unless it is *178 shown beyond a doubt that such was the intention and purpose of the vendor. Slight circumstances will not do to rely on; and when such a result is to be established by circumstances, they must tend inevitably to show that the intention of the vendor was to abandon his lien. If his acts were fraudulent as to others, that would alter the case. But we have already shown that the acts of McCorkle were not a fraud on Bybee, by showing that the debt was diminished in proportion to the security, and by showing also that, even on payment of the residue of the purchase-money, Bybee could not have claimed the whole of the balance of the west half of the section, after deducting the seventy-eight acres; there was still a portion to which Brown was entitled. The mere circumstance that McCorkle knew of the contract between Brown and Bybee, amounts to nothing. It was one they had a right to make; it was conditional only, and if McCorkle had expressly assented, we do not see how this could have affected his lien, as the condition would constitute a part of his contract also, and if not performed, his lien was uninterrupted; though we do not decide on the effect of an express approval by him of the contract; no'such thing is established. He had retained the legal title as a security; he cannot be compelled on slight circumstances to part with that title before the object for retaining it is accomplished. His lien was equivalent to a mortgage, which, although extinguished by payment of the debt, cannot be considered as released without an express contract to that effect, and it has even been questioned whether such release must not be by an instrument of equal dignity. Wentz v. Dehaven, 1 Serg. & Rawle, 312; Davis v. Maynard, 9 Mass. R. 242. It is altogether improbable that McCorkle intended to adopt the contract between Brown and Bybee, and rely on that alone, as in that way he would have discharged Bybee from the debt for which he held their joint note; the precaution which he used in the outset forbids any such conclusion. We think, then, that the circumstances do not establish a release or waiver of the lien as to Bybee.
By the answer a credit of $400 is claimed as the price of the *179 ten acres of land; this Bybee was entitled to have entered, and the decree was in this particular erroneous, and the cause must be remanded, in order that this deduction may be made from the balance due, on inquiry made before a master.
Upon the delivery of the foregoing opinion the counsel for Bybee filed a petition for a reargument of the cause; a reargument was granted; but the court adhered to its former opinion, and directed the following decree to be entered, viz.:
“ This cause came on tobe heard on a transcript of the record from the vice-chancery court at Holly Springs, and was argued by counsel.
“On consideration whereof this court is of opinion that there is no error in the decree of the vice-chancellor, subjecting the south-east quarter of section number seven in the pleadings mentioned, to sale for the payment of the balance of the purchase-money due from said Brown and Bybee to the complainant, on their purchase of the whole section, but there is error in said decree in not allowing to said Bybee a credit for what said Brown received for the ten acres sold to said Coghill, as in the pleadings mentioned, unless said amount should have been embraced in the said credit of $1675 paid by said Brown to complainant, and entered on the note of Brown and Bybee. Said decree is therefore reversed for the above error, and the cause is remanded to the vice-chancery court, with directions to ascertain whether said Bybee has been credited by the price for which said Brown sold said ten acres, and if not to state and allow the same, and McCorkle is ordered to pay the cost hereof.”
The rendition of this or any other decree beyond a reversal of the decree of the vice-chancellor, was resisted in an elaborate argument by George L. Potter, Esq. counsel for Bybee, on the ground of want of power and jurisdiction in the high court of errors and appeals to render such decree, as being mandatory to the vice-chancellor, and depriving him of the exercise of all discretion in the allowance of amendments on the dis *180 covery of any new fact, or otherwise; and as being the exercise of a jurisdiction, original in its nature, by a court of mere errors and appeals, not granted either by the constitution' or laws.
The court, however, rendered the decree; which was enrolled accordingly.