# Wilson's Estate.

*Executors and administrators—Payment—Release.*

Where the amount of a legacy including interest from the expiration of a year after the death of the decedent has been awarded to a legatee, and the executor has paid the face of the legacy but not the interest, and the legatee has executed a release in full for all claims against the estate, the release will not protect the executor from a claim by the legatee for the amount of the unpaid interest; and the same rule applies where a legatee has assigned his claim to an attorney acting for the executor and the latter's wife, the residuary legatee, and has not received the interest awarded to him.

Argued Nov. 11, 1914. Appeal, No. 108, Oct. T., 1914, by Eber E. Hilton, from decree of O. C. Lancaster Co.,

April T., 1911, No. 9, directing payment of amount due on legacy in Estate of Margaret A. Wilson, deceased. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.   Affirmed.

Rule to pay amount due on legacy.   Before SMITH, J. The opinion of the Superior Court states the case.

*Error assigned* was the decree directing payment by the executor.

*B. F. Davis*, for appellant.

*John A. Coyle*, with him *William H. Keller*, for appellees.

OPINION BY TREXLER, J., March 11, 1915:

By the final adjudication in the above estate, filed May 20, 1912, the appellees were found to be entitled to certain legacies bequeathed to them by decedent. In the sums apportioned to them interest was included. The interest was calculated from the expiration of a year after the death of the testatrix, and the accounts showed that there were sufficient funds to pay all the legacies. On December 9, 1912, two of the appellees signed a release in which they acknowledged payment in full of all claims they had against the estate. In the release was incorporated at length a prior adjudication in the estate, but, at the time the release was given, a second adjudication had superseded the first, and the amounts due them were increased by the addition of interest, and the sums so added form the subject of the dispute in this appeal. We have the fact undisputed that these heirs, when they gave their release, each received $35.05 less than they were entitled to receive. The orphans' court subsequently ordered the executor to pay this balance and from that order the appeal, which is before us, is taken. No question arises as to the

correctness of the account. The only question is whether the release extinguished the claims including interest.

There is no question that a release given from one to another, in the absence of fraud, accident or mistake, is ordinarily binding upon the parties. In this case, however, the parties sustained peculiar relations. The accountant had in hand funds belonging to the legatees. He was merely a custodian of the assets belonging to them. He was not personally interested in the matter except to see that the assets were properly distributed in accordance to the directions of the will. The orphans' court had, by its confirmation of the last account, adjudged the heirs entitled to the specific sums set forth therein. Any sum less than the amounts awarded to them could not become the property of the accountant upon any principle of equity. His position is such that it entirely precludes his making a profit out of the estate, other than the compensation allowed by law. To allow an executor to go to the various heirs or distributees and, taking advantage of his position, pay them less than their shares and thus use the estate to his own benefit would be departing from all the standards set up for persons occupying fiduciary positions. The account, as confirmed, shows a complete distribution. Each legatee, including the residuary legatee, is awarded a specific sum. Who is to benefit by the reduction of the several amounts? If the money is to go to the residuary legatee, who in this case is the accountant's wife, she gets the money in addition to the sum which was lawfully awarded her. We need not go into the question of the conclusiveness of a release in cases where there is a compromise as to claims which are still in doubt or concerning which there is a bona fide contest. The case before us presents no such aspect. The simple fact remains that the executor has money in hand that neither belongs to him nor to the residuary legatee, but is due to the appellees. The appellees were in necessitous circumstances, had become discouraged by

reason of the long delay, and were willing to take anything they could get, in fact they thought there would be nothing left. There is also evidence that the executor had been unfaithful to his trust and that they had good grounds for their fears. Certainly the executor should not be allowed to take advantage of these circumstances. As to whether the accountant should have been surcharged with interest is apart from the present inquiry. He had his day in court when the matter was adjudicated. There is some evidence that an appeal was pending at the time the releases were given and that the appeal would delay the settlement of the estate and that that fact entered into the giving of the releases. There is nothing, however, in the testimony that throws any light upon the question how that would have affected the relation of the parties. The court was right in requiring the executor to pay the full amount of the legacies notwithstanding the releases.

The cases cited by the appellant do not apply. In Deardorff's App., 6 Watts, 159, the release was sustained because there was a lapse of over thirteen years and the accountant had in the meantime died. In Hertzler's Est., Moore's App., 192 Pa. 531, a release given by the heir was sustained under circumstances somewhat similar to those before us, but there the dispute was between the nonreleasing heirs and the executor. The releasing heir claimed nothing. In Horton's App., 38 Pa. 294, cited by the appellant, notwithstanding a receipt in full of all demands by the widow, the auditor's report allowed her an additional sum above the sum which she had received and it was confirmed. In Bixler v. Kunkle, 17 S. & R. 298 (304), we quote from the opinion of BRADFORD, J., "This release, having been made by cestui que trust to the trustee, will be operative for nothing more than what has been actually paid. Executors cannot be allowed to purchase in the trust fund for their benefit. Trustees must be kept within the line of their duty. A court of equity watches the

conduct of a trustee with jealousy; and if he compounds debts or mortgages, or purchases them in at a discount, he shall not be suffered to turn the speculation to advantage: 1 Johns. Ch. Rep. 22, 36. The precise amount of the fund, at the time the release was executed, and what more was to be expected afterwards, was within the knowledge of the trustees; 'And they cannot be allowed to use the information they obtain as trustees, to purchase in the trust fund for themselves:' 3 Atk. 37. Courts will not construe a release as vesting any beneficial interest in the trustees: 1 Serg. & Rawle, 279, 280; 1 Vez. 9; 4 Vez. 129; 2 Fonb. Eq. 189." "If an executor obtains a release from the guardian of a minor, on the payment of a less sum than is due to the minor out of the estate, the release is inoperative, except for the money actually paid. The executor stands in the relation of a trustee for the minor, and has no right to speculate upon his ignorance, or his necessities:" Witman and Geisinger's App., 28 Pa. 376.

As to the share due the other appellee, practically the same question arises, although the circumstances are somewhat different. The legatee, instead of executing a release, assigned his legacy to an attorney acting for the executor and for his wife, the residuary legatee. The full amount was not paid to him but a deduction made. This transaction would have been perfectly legitimate if the assignee would have been a disinterested third party, but being the representative of the executor and his wife, the matter differs not from one in which they would have directly dealt. The attorney testified that he merely advanced the money for them. He took the transfer to himself to avoid any risk. The impression the transaction made on the trial court below is shown by the statement made in the examination of the assignee. "But for the trustee to escape paying in full by mere transfer to you—it would not seem on its face quite exactly as you would want it to appear." The whole transaction appears to have

been an indirect way of escaping the payment in part of the amount which was justly due the legatee, and which had been duly adjudged to him.

We concur in the conclusion reached by the lower court, and the appeal is dismissed at the cost of the appellant.