LEDDEL's EXECUTOR *vs.* STARR and wife and others.

1. A bill of interpleader is only proper when there is a claim by different parties to the same fund or assets in the hands of a third party, for which he has a right to ask to be discharged.

2. When a creditor has, by written or parol declarations with regard to a debt, or by conduct tantamount thereto, declared or agreed that a debt shall be given up or relinquished, or that it has been relinquished, a court of equity will consider this an equitable release, and will not permit the representatives of the creditor to enforce the demand.

3. A bequest of $6000 of the money due on a bond from a legatee, with the direction that on payment of the balance of said *bond*, and whatever interest may be due thereon, the bond shall be assigned to the legatee, does not, of itself, release the interest on the bond. But when, from previous directions in the will, and the light of surrounding circumstances, it was the evident intention of the testator to require only the *balance* of the principal, and the interest *thereon*, it was directed to be assigned upon such payment.

4. An assignment of a large amount of property, by a person of advanced years, procured by one having influence over her, without adequate consideration, will be closely examined into by a court of equity.

5. But when, although the money consideration for such an assignment was inadequate, it appeared that the principal motive of the assignor was to make up to her daughter a great inequality in her share of her father's estate, under her father's will ; that the assignment was not made privately, but upon consultation with and approval of others interested ; that it did not leave her in any way destitute, but the consideration therefor (an annuity) was probably equal to all her wants, and was about the income of the securities transferred ; and that the business was transacted when she had sufficient capacity therefor ; the assignment should be sustained.

This cause was brought to hearing on bill, answer, and proofs.

*Mr. Vanatta*, for complainant.

*Mr. Pitney*, for defendants, Starr and wife.

Testator, at his death, held two bonds, secured by mortgage, against his daughter, Mrs. Starr, one for $7800, the other for $6240, called the Livingston bond. By his will, he gave Mrs. Starr $6000, part of the $7800 bond. Since his death, Mrs. Starr has paid the complainant $2400 on account of it, $1800 for principal, and $600 for interest, which she contends is all that was due.

The complainant contends that several thousand dollars arrears of interest are due, and this is the point of controversy as to that bond.

Mrs. Starr relies, not upon actual payments of interest, but upon the *receipts* for part payment, accepted by the testator as in full, and upon the *letters* written by him to her

declaring his intention to charge interest on a *part* of the principal sum only.

We contend that these *letters* and *receipts* amount—1. To a *gift, pro tanto,* of the interest, or—2. To an *equitable release* thereof.

1. As to a *gift.*

· *Delivery* is essential to its validity. But this, again, must be such as the circumstances admit of. The transaction must not be *executory,* it must be *finished.*

The court will not aid the donee to carry out an unexecuted *contract* to give; that is, it will not compel A to hand over to B a horse, or sum of money, which he has promised to give him. But suppose the horse or money is already in the possession of the donee, as bailee or debtor, and the intention to give *in præsenti* is clearly manifested, will the law permit the donor, in the face of his gift, to recover from the donee the horse or money on the strength of the original bailment or loan? I answer, no.

What is the thing given in the case in hand? Clearly the interest accrued or accruing on the bond. How can it be *delivered* by the creditor to the debtor? Prior to payment, it is not in the possession of the creditor, and cannot be the subject of a physical transfer. Suppose the debtor hands the sum due for interest to the creditor, and he gives a receipt for it and hands it back to the debtor as a gift. Such a transaction would undoubtedly amount to a payment, and satisfaction of the interest. How would the result be affected or varied by eliminating from the transaction the idle ceremony of handing the money back and forth?

It is not necessary for us to contend that the testator gave Mrs. Starr the $6000, part of the $7800, in his lifetime, though the evidence would sustain such contention; and the retention of the possession of the bond by him would be no infringement of the rule that *delivery* is a necessary element of a valid gift. The thing given is the *money* secured by the bond, not the bond itself. The debt may be extinguished,

in whole or part, and the bond remain in the possession of the creditor, or the debt may remain unpaid and enforceable, and the bond pass into the possession of the debtor.

The *retention, destruction,* or *surrender* of the bond, or other evidence of the debt, is only evidence of the *intention* of the parties, which *intention* may be made manifest by other and far more decisive and satisfactory evidence. Such evidence we contend this case affords.

2. *Equitable release.*

Love and affection form a sufficient consideration, and the receipt need not be under seal.

The sensible rule is that, even between strangers in blood, debtors and creditors may agree upon anything they choose as a payment.

The rule in *Cumber* v. *Wane* is virtually exploded. It is absurd to hold that if creditor delivers to debtor his bond or note, intending to discharge him *without* payment, the debt will be discharged; while if creditor accept from debtor part payment, and in consideration thereof gives a receipt in full, retaining possession of the bond or note, the debt will *not* be discharged. There is no such charm about the bare possession of the mere paper evidence of the debt.

There are numerous cases where a parol declaration that a security should not be enforced, has been upheld in equity between strangers as well as privies in blood. *Wekett* v. *Raby,* 3 *Bro. P. Cas.* 16; *Richard* v. *Symes,* 2 *Eq. Cas. Abr.* 617; *S. C.,* 2 *Atk.* 319; *Aston* v. *Pye,* 5 *Ves.* 350, note; *Eden* v. *Smyth, Ibid.* 341, a case in point in all respects; *Gilbert* v. *Wetherell,* 2 *Sim. & Stu.* 254; *Flower* v. *Marten,* 2 *Myl. & Cr.* 459; *Yeomans* v. *Williams, Law Rep.* 1 *Eq. Cas.* 184; *Gardner* v. *Gardner,* 22 *Wend.* 526; *Toner* v. *Taggart,* 5 *Binn.* 493; *Wentz* v. *Dehaven,* 1 *S. & R.* 312; *Brinckerhoff* v. *Lawrence,* 2 *Sandf. C. R.* 400, where the cases are collected and reviewed.

The bond was held from 1858, when it matured, to the death of testator, in 1865, upon the understanding that in-

terest on a part of the principal only, was to be demanded and paid. Both parties acted on this understanding. It is dated May 1st, 1853, payable five years after date *with interest on* $3800 *only.* So far as interest was concerned, it was treated by the parties first as a bond for $3800; then as a bond for $2800; and latterly for $1800 only. Again, there is a clear distinction between interest which is reserved by the terms of the contract, and that which the law gives by way of damages for the detention of a debt. One is within the contract and secured by it, and the other is not.

This bond does not, by its terms, reserve interest *after maturity.* The claim of the complainant is for damages for the detention of the debt after maturity; it is not a claim for money secured by contract, and *Cumber* v. *Wane* does not apply. Damages for detention are, in their nature, *unliquidated*, and within the exceptions to the rule of that case.

Formerly nothing was recoverable on a single bill beyond the amount expressed, but latterly damages are allowed for its detention to be computed at interest rates. *Sedg. on Dam.* 375, 389; *Osbourne* v. *Hosier*, 6 *Mod.* 167; *Walker* v. *Constable*, 1 *B. & P.* 306; *Tappenden* v. *Randall*, 2 *B. & P.* 467; *Watkins* v. *Morgan*, 6 *C. & P.* 661; 2 *Zab.* 429.

There is no *legal* or *equitable* rule which prevents a creditor and debtor from agreeing orally, that a past due specialty which is silent on the subject, shall bear interest at any particular rate not usurious.

The creditor has the option to demand damages for the detention of his debt, or not. The retention by him of the possession of the evidence of the debt, and the demand of the sum named in it, presents no barrier in the way of taking him at his word, when he says, "I demand no damages for the detention of this debt." *Watkins* v. *Morgan*, supra. It may be a pecuniary advantage to the creditor to forgive all or a part of the accruing damages, and it is inequitable to permit him to recede from his promise in that behalf, after his debtor has acted on it.

As to the Livingston bond of $6240. The bill admits that

it was supposed to be paid and the mortgage which secured it satisfied, by a transfer from Mrs. Starr to complainant of divers money securities, once the property of Jemima Leddel, the mother of Mrs. Starr, and widow of the testator, but it alleges that the securities so transferred were not the property of Mrs Starr, and therefore the transaction intended as a payment was a nullity; it alleges that Mrs. Leddel's personal representative claims those securities and prays an interpleader between that representative and Mrs. Starr, to settle the title to them. It does not allege, but rather insinuates, that the securities were obtained by Mrs. Starr from her mother by fraud, and prays a discovery by Mrs. Starr of her title to them.

The administrator of Mrs. Leddel, though acting in concert with complainant, and employing the same counsel, does not answer. Mrs. Starr, in her answer, sets out her title fully, which is complete and formal, if not tainted by fraud. No issue of fraud, or no fraud is raised.

Complainant admits that the bond is paid, if his title to the securities derived through Mrs. Starr is perfect. He seeks *protection* by an interpleader, from a claim or suit of Mrs. Leddel's administrator.

Assuming the position of a stakeholder, seeking protection, it was his duty to proceed against the administrator on his failure to answer the bill; he must show no partiality, but take advantage of all defaults of either party, to get what he pretends to seek—*protection.*

The failure of the administrator of Mrs. Leddel to answer the bill, and pursue, in this cause, the claim set up by him, is fatal to such claim. It is an admission by him that he made the claim, and that it is unfounded; it is an abandonment by him of the claim, and a complete *protection* for the complainant. *Hendry* v. *Key*, 1 *Dick.* 291, note; *Statham* v. *Hall*, 1 *Turn. & Russ.* 30; *Hodges* v. *Smith*, 1 *Cox* 357; *Angell* v. *Hadden*, 16 *Ves.* 203; *Richards* v. *Salter*, 6 *Johns. C. R.* 445; *Badeau* v. *Rodgers*, 2 *Paige* 209; *Aymer* v. *Galt, Ibid.* 285; *Stevenson* v. *Anderson*, 2 *Ves. & B.*

Leddel's Executor *v.* Starr.

407; *Martinius* v. *Helmuth*, *Ibid.* 412; *S. C., Cooper (G.)* 245; *Briant* v. *Read*, 1 *McCarter* 271; *Blair* v. *Porter*, 2 *Beas.* 268; *Michener* v. *Lloyd*, 1 *C. E: Green* 38; *Mount Holly Turnpike Co.* v. *Ferree*, 2 *C. E. Green* 121; *City Bank* v. *Bangs*, 2 *Paige* 572.

Upon the merits. The evidence is overwhelming that Mrs. Starr's title to the securities was unimpeachable, and complainant well knew it; and according to the authority of the cases cited the controversy may be finally settled now, though no issue was made under the prayer for interpleader.

THE CHANCELLOR.

The complainant, Samuel W. Leddel, is the executor of the last will of his father, John W. Leddel, deceased. The defendants, Sarah E. Starr, wife of Charles Starr, jun., William Leddel, and Frances Denton, wife of Jonas Denton, are the children of the testator; the five Sewards are the children of his deceased daughter Tempe, and these, with the complainant, are the residuary legatees in his will. D. W. Dellicker, administrator of Jemima Leddel, the widow of the testator, is another defendant.

The object of the bill is to settle the account of the complainant as executor, and for that end to settle and adjust divers claims and controversies between the defendants and the complainant, and also between the defendants themselves, as to the assets of the estate. The bill contains a prayer that the administrator of Jemima Leddel may interplead with the defendant, Charles Starr, and Sarah his wife, as to their right to certain bonds and notes paid to the complainant by them in discharge of a mortgage.

But this is not a case for interpleader. The complainant accepted these securities in payment of the mortgage, and gave up the mortgage and executed a satisfaction piece, by which it was canceled. The administrator of Jemima Leddel is alleged to claim these securities, and the Starrs make no claim upon them. They claim from the complainant the

bond secured by the mortgage, and which, by mistake as they allege, was not given up with the mortgage when it was paid. It is not a claim by different parties to the same fund or assets in his hands, for which he has a right to ask them to discharge him, and interplead between themselves. The relief, by interpleader, must therefore be denied; but as all parties concerned are before the court, and as the account of the complainant cannot be adjusted without settling these controversies, they may be determined in this suit.

The relief asked against the children of Tempe Seward was founded upon a provision in the will, that if the testator should make any future advances to them, it should be taken as part payment of a legacy of $5000 bequeathed to them. The bill alleged such advances and prayed for a discovery, and that they might be deducted from that legacy. Pending the suit, this matter has been amically adjusted between the complainant and the children of Tempe Seward, and is now out of the controversy.

Another controversy, as to which relief is sought, was concerning a bond and mortgage given by Starr and wife to the testator, dated May 2d, 1853, conditioned for the payment of $7800, on the 1st day of May, 1858, and the interest on $3800 of it, to be computed from the day of the date of the bond, at six per cent. per annum, and to be paid in the meantime, yearly. On May 2d, 1854, Sarah E. Starr paid the testator $168, for interest, for which he gave the following receipt: "Received of Sarah E. Starr, $168 in full, for the interest due on a bond which I hold against her and her husband, given for $7800, May 2d, 1853, as it is my intention to give to the said Sarah all the interest now due, and to become due, on the said bond, except the interest on $2800. May 2d, 1854. J. W. Leddel." On November 3d, 1856, Sarah E. Starr paid the testator $420 for interest on that bond and mortgage, for which he gave a receipt in these words: "New York, November 3d, 1856. Received of Mrs. Sarah E. Starr $420, being in full for interest on

2 A *

bond of $7800, to 1st instant; interest on $5000 being waived, according to agreement.　J. W. Leddel."

On the 1st day of July, 1859, the testator executed his will, by which he gave to Sarah E. Starr, for her separate use, " the sum of $6000, part of the amount due on the bond for $7800, secured by mortgage executed by herself and husband;" and further stated, "and I do direct my executors, on payment of the balance of said bond, by my said daughter, and whatever interest may be due thereon, unless I make such assignment during my life, to assign the same to her."　On the 21st day of October, 1859, the testator wrote a letter to Charles Starr, jun., in which he stated : " I have made some new arrangements with regard to the distribution of my property, in which I have bequeathed to Sarah $6000, instead of $5000, over which my executor will have no control, as it is now in her hands, and will not be taken out by me or my agents, without her consent, not even by yourself. In this new arrangement, she is her own sole agent, so that if she throws away her property, she will have no redress."

On February 25th, 1861, he wrote to Charles Starr : " Sir.　I received your note requesting a statement of your wife's paper in my hands.　The interest on the first bond was credited up to November 1st, 1856, from which time I have only charged interest on $1800, making a present to Sarah of $6000, since which time there will be four years and four months.　The interest would be $464; on which sum $400 has been received, $100 in January and $300 in October, 1859."

The complainant claims that interest on $3800 of the principal of the bond from the date, and on $4000 of it from May 1st, 1858, deducting the sums actually paid for interest, is due on the bond and mortgage and must be paid, together with $1800 of the principal, before the bond and mortgage can be assigned.　Mr. and Mrs. Starr contend that the effect of these receipts and letters, and of the bequest in the will, is to release or give to her all the interest except the interest on the $1800; and that she was entitled to have the bond

and mortgage assigned to her upon payment of $2416.10 being the $1800 principal, and $616.10 the interest on $1800, from November 1st, 1856, to March 26th, 1866, less the $400 paid to the testator; and they tendered that sum on the day last mentioned, and demanded the assignment.

As to the interest due before February 1st, 1861. The defendants contend that the receipts and the letters of October 21st, 1859, and of February 25th, 1861, show that the amounts paid for interest before February 1st, 1861, had been paid and received in full for interest to that date, except the sum of $64, as stated in the letter of February 25th, 1861. Such is certainly the intention of the testator as clearly expressed in those receipts and in that letter, all written and signed by him. To accept part payment, in full for all interest due, and to give the residue to his daughter, was what he had a perfect right to do, as well as what he intended to do, and it is down in writing. But the complainant objects that the principle settled in the case of *Cumber* v. *Wane*, 1 *Strange* 426, and 1 *Smith's Lead. Cas.* 439, and the numerous cases arising from the decision in that, which is, that part of a debt cannot be accepted as payment of the whole, will prevent the intention of the testator from having any effect upon the interest not actually paid. It is not necessary here to analyze the numerous and conflicting decisions to which the seemingly absurd ruling in that case has given rise. The limitation of, and exceptions to the rule are not yet settled at law, after the lapse of nearly one hundred and fifty years. But there is a series of decisions in courts of equity in England, and in this country, which have established the principle that where a creditor has, by written or parol declarations with regard to a debt, or by conduct tantamount thereto, declared or agreed that a debt shall be relinquished or given up, or that it has been so relinquished, a court of equity will consider this an equitable release, and will not permit his representatives to enforce it.

The case of *Wekett* v. *Raby*, 3 *Bro. P. C.* 16, is the leading case on that subject. In that case the testator said a

few days before his death: "I have John Raby's bond; I keep it because I may need it; when I die he shall have it; he shall not be asked for it." Lord Macclesfield ordered the bond to be given up with costs. The House of Lords affirmed the decision except as to costs.

In *Aston* v. *Pye,* cited in 5 *Ves.* 350, note, testator held the note of Pye, and made this entry in his books : " Pye pays no interest, nor shall I take the principal unless greatly distressed." Lord Kenyon, Master of the Rolls, sent the case for trial at the law courts; they at first held that it could not be a discharge at law, but was a testament. It was refused probate in the Ecclesiastical Courts, and upon it being brought again before the Court of Common Pleas, it was held to be a conditional discharge, and that as he did not demand it in his life, his executors could not recover. In *Eden* v. *Smyth,* 5 *Ves.* 341, Lord Loughborough held that a debt of £900 from testator's son-in-law was discharged by entries in testator's books, showing that he never meant to demand it.

The same doctrine is held by Lord Cottenham, in *Flower* v. *Marten,* 2 *Myl. & Cr.* 459, and by Sir John Leach, in *Gilbert* v. *Wetherell,* 2 *Sim. & Stu.* 254. In *Yeomans* v. *Williams, Law Rep.* 1 *Eq. Cas.* 184, Sir J. Romilly, M. R., held that the interest on a mortgage for £1000, given by Yeomans on his homestead to his father-in-law, was discharged by a letter from the mortgagee to Yeomans' wife, telling her not to sell the house, that they could live there as they did, free of *rent.* Vice Chancellor Wigram, in *Cross* v. *Sprigg,* 6 *Hare* 552, in his minute and critical examination of these cases, endeavors to discredit some and to evade the force of others, and his authority is against the principle, yet it seems to me so well established by the weight of authority, and so consonant to good sense and the principle that should govern courts of equity, that I must adopt it as the established doctrine of the English Court of Chancery at the time when the law of that court became the law of this. And it must be held to be a modification of the harsh

doctrine of *Cumber* v. *Wane*, to that extent. The same doctrine has been adopted in New York, in *Brinckerhoof* v. *Lawrence*, 2 *Sandf. C. R.* 400, and in Pennsylvania, in *Toner* v. *Taggart*, 5 *Binn.* 490, and *Wentz* v. *Dehaven*, 1 *Serg. & Rawle* 312; and the extent to which these authorities go, would discharge the Starrs from all interest except upon the $1800 during the life of the testator.

It is contended, also, that the bequest to Sarah, in the eighth clause of the will, amounts to a gift of all the interest, except on $1800. It gives to her $6000 of the money due on this bond, and directs that, on payment of the *balance* of said bond, and whatever interest may be due thereon, the bond shall be assigned to her. If the word " thereon" is construed as referring to the balance of it, of course she will be entitled to the transfer, on payment of that sum, and the interest due on it. The bequest of the $6000, of itself, would not release the interest on it, as it only takes effect from the death of the testator, until which time interest would run on; but if the testator had explicitly directed his executors to transfer the bond upon payment of $1800, and interest on that sum from February 1st, 1861, the case would be clear. The only question is, whether the word " thereon" means the same thing. The balance of the bond here evidently means the balance of the principal, else the words, " and whatever interest may be due thereon," would be surplusage. And if the clause was written as it must be interpreted, "the balance of the principal secured by said bond," there would be little hesitation in referring the word *thereon* to such balance, and not to the word bond. According to the usual construction of such phraseology, I think this would be the interpretation. The last subject matter of the direction given, was this balance of principal; and, although the word bond is used to describe that subject matter, and as such is last in the sentence, yet a relative like this is usually taken to refer to the last subject matter spoken of, and not to the last word. And if the language, when doubtful, may be read by the light of surrounding circumstances, there can be no doubt, from

the directions previously given in this case, that it was the intention of the testator to require interest on the sum of $1800 only. I am, therefore, of opinion that the amount paid to the complainant on this bond, $2416.10, is a full payment and satisfaction of it.

Another controversy relates to a bond for $6240, dated April 30th, 1853, made by Starr and wife to the executors of L. R. Livingston, and assigned to and held by J. W. Leddel, the testator, at his death, and securities to that amount delivered by Starr and wife to the complainant, in payment of the same. These securities consisted of a check of the complainant for $5102.50, given by him to Jemima Leddel, the widow, and drawn payable to her order, and endorsed by her to the order of Charles Starr. This was handed over by Starr to the complainant, but not endorsed by Starr. It was accepted by the complainant. The endorsement was omitted by mistake, and Starr has offered, and still is willing to endorse it, but complainant will not permit him to do it. The other securities are eight promissory notes, and two bonds secured by mortgages, amounting, with interest, to $3391.78, which were held by Sarah E. Starr, and were assigned to the complainant, by writing under her hand and seal, dated August 18th, 1865, and were delivered to and accepted by him as payment for so much on that bond and mortgage. These securities had been assigned to Sarah E. Starr, and the complainant's check delivered to her by Jemima Leddel, on the 21st of July, 1865, in consideration of a bond and mortgage given by Mr. Starr and his wife to her, for the payment of an annuity of $500 per annum during her natural life. It is contended by the complainant that this assignment was procured improperly, and without sufficient consideration, from Jemima Leddel, when she was eighty years of age, and too old and feeble for such a transaction.

An assignment of a large amount of property from a person of the age of Mrs. Leddel, procured by one having influence over her, without adequate consideration, will be closely examined into by a court of equity. In this case,

the bond for an annuity of $500 was an altogether inade-quate consideration for the transfer of assets amounting almost to $9000. The interest on them was about equal to the annuity. But the true consideration was, as clearly appears from the evidence, a strong desire on the part of Mrs. Leddel to make up to Mrs. Starr a great inequality in the provisions of the will of her husband, by which the share of Mrs. Starr was less than that of her other children, by at least that amount. That object was known to, and approved of by the complainant and one of the other daughters. She decided to provide for it by assignment in her lifetime, contrary to the advice of her counsel, but with the approval of the complainant, who, with her, was apprehensive of litigation about any will by some of her children, who had contested the will of her husband. By the evidence of her counsel, and of others, it is shown that she clearly understood and approved of the assignment which she executed, and that her capacity to do so was sufficient. She afterwards, perhaps, repented of having done this, but she continued to accept the annuity secured to her. This annuity, although not a sufficient consideration for the assignment, was probably equal to all her wants, and was about the income of the amount of the securities, and, I have no doubt, as much as she would have expended for herself, if she had retained the whole. It was, then, a disposition of her property, made for a judicious object, one that had a claim on her sense of justice; an equal provision for her own daughter, not foolishly done, so as to leave herself in any way destitute, and not done privily, but upon consultation with, and approval by others of her children, and when she had sufficient capacity for such business. In my opinion, there is no cause for questioning the validity of this transfer. I shall therefore hold that the bond of $6240 is paid and satisfied, and must be delivered up to the defendants, Charles Starr and Sarah his wife; but Charles Starr must endorse the check, and he and his wife make such additional assignment of the

other securities as the complainant's counsel may request, and as may be reasonable and proper.

The complainant is entitled to have his accounts settled in this court, and it must be referred to a master to state them on the principles declared.